THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THEODORE EUBANKS, JR., Defendant-Appellant.

First District (3rd Division)    No. 77-133

Opinion filed December 7, 1977.

James J. Doherty, Public Defender, of Chicago (Frank A. Marino and John M. Kalnins, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Kenneth McCurry, and Carol A. Kearney, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

The defendant, Theodore Eubanks, Jr., was charged with the murder of Robert Delaney. A jury found him guilty of that crime and the court sentenced him to a term of 14 to 20 years. Defendant contends on appeal that certain cross-examination deprived him of due process. He also argues that he was not proved guilty of murder beyond a reasonable doubt.

David Shehi testified that on November 10, 1974, at about 3 p.m. he was with the decedent in a second floor apartment at 3913 West Lexington Street in Chicago. They heard a commotion and went outside. Defendant was carrying a shotgun and chasing a vehicle. The defendant walked back and said that he was going to shoot the decedent. The defendant raised the shotgun and shot the decedent, told the witness he was next, and fled.

Mary Brown testified that on November 10, 1974 she lived in a third floor apartment at the Lexington Street address with her husband, four children, her sister, and her sister's boyfriend, the decedent. Defendant had stayed at her apartment overnight. That morning her brother, David Shehi, along with the decedent and the latter's two brothers, Curtis and Otis Delaney, arrived at her apartment. Some time that morning she saw the defendant and the three Delaneys enter the washroom. About 1 p.m. her brother and the decedent went downstairs to the second floor apartment, and she followed. When she heard a noise she went outside. Defendant, carrying a shotgun, came up to where she, her brother and the decedent were standing. Defendant informed the witness that Curtis and

Otis Delaney had robbed him, and he told the decedent that he was going to kill all the Delaneys. The defendant kept the gun pointed at the decedent. The decedent did not have a weapon. The decedent stated that he had not done anything and that he did not know what it was all about. The defendant announced that he was going to kill the decedent, then shot him. Defendant stated that the witness' brother was next. The witness identified the shotgun at trial and stated that she had seen it first two weeks before the shooting. Defendant had asked her to lock it up.

Officer Michael Simpson of the Chicago Police Department testified that after viewing the scene he and several other officers went to an apartment about a block from the shooting. He entered a bedroom and saw a pair of shoes protruding from under the bed. He and another officer overturned the bed and removed the defendant. The officers found a shotgun which had just been fired behind a panel in a kitchen ceiling crawl space.

Defendant testified that on the evening of November 9 he visited the racetrack and won over $300. He awakened at about 12:30 p.m. on November 10 and entered the washroom. The decedent and Curtis Delaney came in; the latter drew a gun and said it was a stickup. Defendant started to give Curtis his money, but Curtis hit him twice with the revolver and took his coat. The brothers left with defendant's coat and shoes. Defendant grabbed a shotgun and went looking for the brothers. He found the decedent who began cursing him. When defendant asked the decedent to return his money, the decedent refused and kept cursing. This angered and scared defendant who was holding the shotgun in his right hand. The decedent unfolded his arms, and defendant shot him. He went to his uncle's apartment and hid under the bed.

Officer Ben Wieclawek of the Chicago Police Department testified in rebuttal for the State that he advised the defendant of his constitutional rights under *Miranda*. On the afternoon in question the defendant told him that he had not shot the decedent. Defendant told the officer that he had been drinking all morning and went to sleep at a relative's apartment about noon. He was awakened by police officers, became frightened, and hid under the bed.

■■ Defendant initially maintains that he was deprived of his constitutional right to due process because he was cross-examined about his failure to give police officers his exculpatory explanation after he was arrested and told that he had the right to remain silent. After defendant testified on direct examination, he was asked by the prosecutor whether he had told the officers that he had been to the racetrack and won $300, whether he had told them he had been robbed, and whether he had told them he had asked decedent for the return of his money.

The defendant's reliance on *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, for his contention of constitutional deprivation is

misplaced. In that case the defendant was given his *Miranda* warnings and chose to remain silent. At trial he testified that he had been framed. He was cross-examined as to why he had not so informed the police officers instead of remaining silent. The court held that a prosecutor may not seek to impeach defendant's exculpatory testimony, related for the first time at trial, by cross-examining the defendant about his silence after he has received the *Miranda* warnings. After defendant has been informed that he has the right to remain silent, he should not be penalized for exercising that right. Unlike *Doyle*, the present defendant, after being given his warnings, chose not to be silent. His trial testimony and his post-arrest statements were inconsistent, and he was subject to cross-examination for impeachment purposes.

In *People v. Lewis* (1977), 51 Ill. App. 3d 109, 366 N.E.2d 446, this court considered defendant's contention that his constitutional right to remain silent was violated by the prosecutor's cross-examination relative to defendant's failure to tell police officers the same exculpatory facts he gave at trial and by the prosecutor's reference to the contradiction in closing argument. In that case we noted that defendant had not opted to remain silent after being given his *Miranda* warnings. At the police station he had told the police that he had not stabbed the decedent and did not know what had happened because he had just arrived. At trial he testified that he was at a tavern when the stabbing occurred. On cross-examination the prosecutor asked why he had not so informed the police. We held that in view of his statement to the police there was no issue as to his right to remain silent. (See also *People v. Queen* (1974), 56 Ill. 2d 560, 310 N.E.2d 166; *People v. Moore* (1973), 54 Ill. 2d 33, 294 N.E.2d 297.) Similarly in the present case, defendant properly was impeached by his prior inconsistent statements and not by his silence.

■■ Defendant next maintains that he was not proved guilty of murder beyond a reasonable doubt. He argues that he was acting under a sudden and intense passion resulting from serious provocation by the decedent, and that he was guilty only of voluntary manslaughter. He therefore requests that we reduce the conviction to that of voluntary manslaughter and that we reduce the penalty accordingly.

We find no merit in this contention. The evidence adduced by the State overwhelmingly demonstrated that defendant, using a shotgun, cold bloodedly murdered an unarmed person who had not provoked defendant in any way.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

JIGANTI and McGILLICUDDY, JJ., concur.