THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHNNY BRADLEY, Defendant-Appellant.

First District (3rd Division)    No. 79-2352

Opinion filed June 30, 1981.

T. Lee Boyd, Jr., of Boyd, Gant and Spence, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, James S. Veldman, and Joseph J. McNerney, III, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE RIZZI delivered the opinion of the court:

Defendant, Johnny Bradley, was convicted of murder in a jury trial and was sentenced to a term of 20 to 35 years. On appeal, he argues (1) he was denied his right to a fair and impartial jury because the trial court refused to allow questions relating to self-defense to be asked of the prospective jurors and (2) he was improperly cross-examined and rebuttal testimony was improperly introduced regarding his post-arrest silence. We affirm.

On September 4, 1974, Freddie Jones, Donald Nash and the victim, Gregory Coleman, were sitting on the front steps of a building at 1515-1517 69th Place in Chicago, Illinois. Defendant testified that he lived at 1515 69th Place on that date whereas one witness testified that only defendant's wife and children lived there at that time. The three men

were sharing a pint of wine. At that point, they had already shared two other pints of wine.

While the three men were sitting on the steps, defendant and Demetrios Hirsch approached them. Defendant appeared to be drunk at the time. Jones got up so that defendant and Hirsch could pass by him and enter the building. According to Jones and Nash, no conversation took place between the two groups of men. Shortly after the men had entered the building, Hirsch exited and walked down the street. Jones testified that approximately five minutes later, defendant came out, pointed a gun at Gregory Coleman and shot him. Nash saw the victim jump up and heard him say, "Oh." Nash turned around and saw defendant with a gun in his hand.

After he was shot, the victim got up and ran through the alley. Jones ran through the gangway and then came back to grab Nash. Nash had been staring at defendant while defendant was pointing a gun at him. Defendant chased Jones and Nash as they ran through the gangway. Jones and Nash then went to the victim, who was lying in the alley, and defendant ran in another direction.

Defendant testified that when he arrived at home after work, Jones, Nash and the victim were sitting on the front steps of his building. Hirsch was not with him at the time. According to defendant, when he asked if he could "get by," the victim, using vulgar language, told him to walk around. When defendant said he only wanted to get around them, the victim hit him on the side of the head with a gun. Defendant grabbed the victim's arm, and they struggled. The victim said to defendant, "I'll kill you." Defendant then grabbed the gun and shot the victim. Defendant testified that he did not verbally or physically threaten the victim before the victim pulled out the gun.

Approximately 1½ years after the incident, defendant was arrested in Detroit, Michigan, where he had been living while using a different name.

We first address defendant's contention that he was denied his right to a fair and impartial jury when, during voir dire, the trial court refused to ask certain supplemental questions tendered by defendant. Prior to the questioning, the trial judge stated that he intended to conduct the voir dire examination. Subsequently, defendant's attorney submitted a list of 54 proposed questions to be asked of the prospective jurors. Ten of these questions related to defendant's defense of self-defense. When defendant's attorney specifically requested that the 10 questions be asked, the trial court refused. The trial court stated that the questions would be confusing and lead to speculation because it would be telling the prospective jurors that there are certain circumstances in which a person may use deadly force for the purpose of self-defense without informing them as to what those circumstances are. The trial court remarked that it would

be better to instruct the jury on the law of self-defense at the close of the evidence.

The purpose of the voir dire examination is to allow the parties to determine whether the minds of the prospective jurors are free from bias and prejudice. (*People v. Carpenter* (1958), 13 Ill. 2d 470, 475, 150 N.E.2d 100, 103; *People v. Witted* (1979), 79 Ill. App. 3d 156, 164, 398 N.E.2d 68, 76.) The trial court is primarily responsible for conducting the voir dire examination, but it may allow the parties to supplement the examination by the submission of additional questions or by direct inquiry. The extent of supplemental examination is within the discretion of the trial court. (*Witted*, 79 Ill. App. 3d 156, 164, 398 N.E.2d 68, 76; *People v. Lowe* (1975), 30 Ill. App. 3d 49, 54, 331 N.E.2d 639, 642; *People v. Stewart* (1973), 12 Ill. App. 3d 226, 230, 297 N.E.2d 391, 394.) The questions asked during voir dire may not "directly or indirectly concern matters of law or instructions." Ill. Rev. Stat. 1977, ch. 110A, par. 234.

■■ We do not believe that the trial court abused its discretion in refusing to ask the questions relating to self-defense. As the trial court pointed out, the questions could be confusing and lead to speculation, because they refer to self-defense and circumstances under which it may be raised without defining the defense or the circumstances. Furthermore, self-defense was a matter which was fully covered in the instructions at the close of the evidence. Therefore, there was no abuse of discretion, and defendant was not deprived of a fair and impartial jury.

Defendant also argues that reversible error occurred when the prosecutor improperly cross-examined him regarding his post-arrest silence and then presented rebuttal testimony on that point. During cross-examination, the prosecutor questioned defendant as follows:

"MR. KANE: Q. Sir, do you remember telling Investigator Hill on the day you were taken into custody by Investigator Hill that you did not know anything about the shooting? Do you remember telling him that?

THE WITNESS: A. Do I remember telling him that?

Q. Yes. Yes or no.

A. I don't recall.

Q. Did you ever tell Investigator Hill that you didn't know anything about the shooting?

MR. BOYD: Objection.

THE COURT: Overruled.

MR. BOYD: Judge, he has asked and answered the question. He said he didn't recall.

MR. KANE: I think there are two different questions.

THE COURT: Overruled.

THE WITNESS: A. I might have. I may have.

* * *

MR. KANE: The question is, you may have told Investigator Hill something different than what you are telling the ladies and gentlemen of the jury today?

* * *

THE WITNESS: A. I didn't tell them anything."

In rebuttal, Investigator Hill testified that after he read defendant the *Miranda* warnings, defendant stated that he wished to answer questions. When asked if he wished to discuss the shooting of Gregory Coleman, defendant responded that he did not know anything about the shooting. During closing argument, the prosecutor commented on this testimony.

Defendant maintains that error was committed under *Doyle v. Ohio* (1976), 426 U.S. 610, 619, 49 L. Ed. 2d 91, 98, 96 S. Ct. 2240, 2245, where the court held that a defendant's silence at the time of arrest and after receiving *Miranda* warnings may not be used for impeachment purposes. The court reasoned that every post-arrest silence is "insolubly ambiguous" because "[s]ilence in the wake of [*Miranda*] warnings may be nothing more than the arrestee's exercise of [his] *Miranda* rights." (*Doyle*, 426 U.S. 610, 617, 49 L. Ed. 2d 91, 97, 96 S. Ct. 2240, 2244.) The court concluded that it would be fundamentally unfair and a deprivation of due process to allow an arrested person's silence to be used to impeach an explanation subsequently offered at trial. *Doyle*, 426 U.S. 610, 618, 49 L. Ed. 2d 91, 98, 96 S. Ct. 2240, 2245.

The rule established in *Doyle*, however, does not apply to cross-examination relating to prior inconsistent statements. (*Anderson v. Charles* (1980), 447 U.S. 404, 408, 65 L. Ed. 2d 222, 226, 100 S. Ct. 2180, 2182); *People v. Rehbein* (1978), 74 Ill. 2d 435, 443, 386 N.E.2d 39, 42-43; *In re S.L.C.* (1979), 75 Ill. App. 3d 473, 476, 394 N.E.2d 687, 689; *People v. Eubanks* (1977), 55 Ill. App. 3d 492, 495, 371 N.E.2d 92, 94; see also *People v. Norwood* (1980), 88 Ill. App. 3d 157, 158-59, 410 N.E.2d 474, 475.) As the Supreme Court stated in *Anderson*:

> Such questioning makes no unfair use of silence, because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all. 447 U.S. 404, 408, 65 L. Ed. 2d 222, 226, 100 S. Ct. 2180, 2182.

■■ In the instant case, defendant characterizes his conduct as post-arrest silence. However, according to Investigator Hill, defendant was not silent. When asked if he wished to answer questions, defendant responded in the affirmative. Defendant then stated that he did not know anything about the shooting. This statement is manifestly inconsistent with defendant's trial testimony which indicated that he was indeed very familiar with the circumstances surrounding the shooting. At trial, de-

fendant admitted shooting Gregory Coleman but claimed that the shooting was in self-defense. The prosecutor was attempting to impeach defendant's trial testimony by use of his earlier statement that he did not know anything about the shooting. Defendant was impeached by his prior inconsistent statement, not by his silence. (See *Eubanks*, 55 Ill. App. 3d 492, 495, 371 N.E.2d 92, 94.) Therefore, defendant's argument is without merit.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McGILLICUDDY and WHITE, JJ., concur.