THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* VERNON ROBINSON, Defendant-Appellant.

First District (1st Division)    No. 62487

Opinion filed November 22, 1976.

James Geis, of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Joan S. Cherry, and Edward H. Phillips, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SIMON delivered the opinion of the court:

Defendant Vernon Robinson was charged with the murder of Floyd Clark. At trial, before a jury, he claimed he shot Clark in self-defense. He was found guilty of voluntary manslaughter.

The police apprehended the defendant at the scene of the killing with a gun which was virtually still smoking in his hand. An eyewitness to the shooting ran out of a hotel lobby where it occurred and flagged down a passing police squad car. When the officers entered the hotel, they found the defendant walking toward them with a gun in his hand. They ordered the defendant to hand over the gun, and as they took the gun out of defendant's hand, he told them, "I did it. I shot him." One of the officers began to inform defendant of his rights, and the defendant interrupted saying, "I know my rights. I did it, but I'm not going to tell you why."

Defendant testified that he shot Clark because after an argument with him over money, Clark seemed to be reaching for a gun. The prosecutor in cross-examining the defendant elicited over his counsel's objection that he did not tell the police either at the hotel immediately after the shooting or when he was taken to the police station that he had acted in self-defense. This was also brought out in the following portion of the State's closing argument.

"Assistant State's Attorney: Put yourself there and if you shot anybody in self-defense and the police came and you had this gun—

Defense Counsel: Objection to this line of argument.

The Court: Overruled. Proceed.

Assistant State's Attorney: You had this gun at your side and you had just shot somebody, is that reasonable? Now, I ask you, if you just shot somebody and you shot him because you believed he was coming out from his left side with a gun, wouldn't you tell the police, I just shot him and he has a gun? Wouldn't you be screaming all the way to the station that he was going to kill me, he threatened to kill me? Wouldn't you be screaming in the station, I shot him because he was going to kill me, or do you simply say, I shot him? And you heard him testify. You heard him testify he

never saw anything in the man's hands, he shot that man in cold blood."

■■ ˙ The defendant first contends on appeal that the State deprived him of his fifth amendment and due process rights by bringing out in his cross-examination and emphasizing in closing argument that when arrested he refused to tell the police why he shot the deceased. The defendant's position is supported by the following decisions: *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240; *United States v. Hale* (1975), 422 U.S. 171; *People v. Monaghan* (1976), 40 Ill. App. 3d 322, 352 N.E.2d 295; and *People v. Wright* (1975), 32 Ill. App. 3d 736, 336 N.E.2d 18. In *People v. McClure* (1976), 42 Ill. App. 3d 952, 356 N.E.2d 899, this court accurately summarized the protection extended to an accused by these decisions in the following language:

> "A defendant has the constitutional right under the Fifth Amendment to remain silent during custodial interrogation. His silence can be attributed to reliance on this right and may not be used to support an inference that his trial testimony was a later fabrication [citation]. It is also a violation of the due process clause of the Fourteenth Amendment to use a defendant's post-arrest silence to impeach his trial testimony."

The State asserts that because the defendant admitted to the police that he shot Clark, his failure to include in his statement his reason for the shooting was an omission that could be used for impeachment notwithstanding these decisions. Had the defendant remained completely silent, the decisions referred to above would clearly prohibit the use of his silence to impeach his testimony that he was acting in self-defense. But, a person under arrest does not have to refrain from saying anything in order to preserve his fifth amendment rights. It is his privilege to stop at any point during custodial interrogation to assert his rights. By telling the police that he shot the deceased, the defendant was merely stating the obvious, and he did not waive or forfeit all of his fifth amendment rights by this admission.

■■ From the time of the first shot, the only real issue in this case was not whether the defendant fired it, but whether he had any excuse or justification for the killing. On this question, defendant, although he did not state his position as articulately as one with legal training might have, explicitly relied on his constitutional rights. He said: "I know my rights, I did it, but I'm not going to tell you why." Defendant's assertion of his rights was not inconsistent with his later exculpatory testimony at trial. The cross-examination of the defendant and the State's closing argument, both over defendant's objection, therefore, invaded the defendant's fifth amendment and due process rights.

It was also error to allow the police officer to testify that the defendant

refused to explain at the scene of the incident why he shot the deceased. Even though no objection was offered to this testimony at trial, the plain error rule should be applied to it. See *People v. Monaghan* (1976), 40 Ill. App. 3d 322, 352 N.E.2d 295.

The State contends that *People v. Queen* (1975), 56 Ill. 2d 560, 310 N.E.2d 166; *People v. Allen* (1976), 37 Ill. App. 3d 619, 346 N.E.2d 486, *appeal denied* (1976) 63 Ill. 2d 558; *People v. Fleming* (1976), 36 Ill. App. 3d 612, 345 N.E.2d 10; and *People v. Kent* (1973), 15 Ill. App. 3d 523, 305 N.E.2d 42, hold that where a defendant does not remain completely silent, his failure to offer exculpatory information to the police may be used for impeachment purposes. Even assuming these cases, all decided before *Doyle*, remain sound law after *Doyle*, they are distinguishable from the present case because in none of them did a defendant expressly assert his privilege to remain silent.

The State urges that the jury's verdict of voluntary manslaughter indicates that the jury rejected the prosecutor's argument that the defendant's post-arrest silence demonstrated that his testimony relating to self-defense was fabricated. Thus, the State argues, reference to defendant's refusal to explain the shooting prior to trial was only harmless error. However, the evidence and argument concerning defendant's silence may have influenced the jury's decision to convict the defendant of voluntary manslaughter instead of acquitting him. A defendant is guilty of voluntary manslaughter where he believes that he must kill another in order to save his own life, but this belief is unreasonable. (Ill. Rev. Stat. 1973, ch. 38, par. 9—2.) The jurors in this case may have been persuaded by the improper cross-examination and argument to conclude that if the defendant believed his life was in danger, and thought his belief was reasonable, he would have explained this to the police. The error was not harmless beyond a reasonable doubt (*Chapman v. California* (1967), 386 U.S. 18), and the defendant must be granted a new trial.

The second issue raised by the defendant in this appeal is whether the trial court abused its discretion by allowing the State's motion for an extension of time under an Illinois statute (Ill. Rev. Stat. 1973, ch. 38, par. 103—5), sometimes referred to as the "Four Term Act," which requires that a defendant, not admitted to bail, be brought to trial within 120 days of the day he is taken into custody. The statute makes the following provision for extension:

> "If the court determines that the State has exercised without success due diligence to obtain evidence material to the case and that there are reasonable grounds to believe that such evidence may be obtained at a later day the court may continue the cause on application of the State for not more than an additional 60 days." (Ill. Rev. Stat. 1973, ch. 38, par. 103—5(c).)

The State moved for an extension because of its failure to secure the presence within the 120-day period of the unquestionably important witness, Lawrence Haynes. He was in the presence of the defendant and Clark immediately prior to the shooting, heard two shots fired, and was the first person the defendant spoke to after the shooting. The defendant argues that the State did not exercise due diligence to obtain Haynes' appearance, and that the trial court, therefore, should not have granted the continuance.

The record demonstrates sufficient diligence by the State to justify the continuance. On August 13, 1974, 9 days before the running of the 120-day period, a sheriff's investigator attempted to serve Haynes with a subpoena, but discovered that he had moved. On August 16, a second investigator served Haynes with a subpoena for August 21. When Haynes did not appear on that date, the investigators unsuccessfully attempted to reach him at his residence and at what he claimed was his place of employment. Also early in the morning of August 21, an Assistant State's Attorney went to Haynes' residence to arrange for a meeting with Haynes at the nearby scene of the shooting. Haynes' landlady said he was still asleep. When the Assistant State's Attorney returned a short time later, the landlady said Haynes had left. On August 22, the last day of the 120-day period, Haynes called the Assistant State's Attorney and said that he had failed to appear on the 21st because of a confusion as to dates, and that he could not appear on the 22nd because of a job interview. He refused to say where he was.

In short, the State had subpoenaed Haynes, and until the last minute it had no reason to believe that he would not show up to testify within the 120-day period. Defendant's reliance on *People v. Shannon* (1975), 34 Ill. App. 3d 185, 340 N.E.2d 129, is, therefore, misplaced. In *Shannon* the State, by consulting police furlough schedules, could have learned in advance that its police officer witnesses would be on furlough at the end of the 120-day period.

■■■ The decision of a trial court to grant a continuance pursuant to section 103—5(c) (Ill. Rev. Stat. 1973, ch. 38, par. 103—5) will not be disturbed absent a clear abuse of discretion. (*People v. Arndt* (1972), 50 Ill. 2d 390, 280 N.E.2d 230; *People v. Robinson* (1976), 41 Ill. App. 3d 433, 354 N.E.2d 551.) We find no abuse of discretion in this case.

The judgment of conviction is reversed and the cause is remanded for a new trial.

Reversed and remanded.

GOLDBERG, P. J., and O'CONNOR, J., concur.