THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROBERT TRUMBULL, Defendant-Appellant.

First District (1st Division)    No. 78-12

Opinion filed December 11, 1978.

James J. Doherty, Public Defender, of Chicago (Timothy P. O'Neill and Joseph Ignatius Cronin, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Pamela L. Gray, and Carol A. Kearney, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BUCKLEY* delivered the opinion of the court:

Defendant, Robert Trumbull, was found guilty of the offense of battery (Ill. Rev. Stat. 1977, ch. 38, par. 12—3) in a bench trial and sentenced to 90 days in the House of Corrections.

Complainant, Tad Pickens, testified that on September 26, 1977 at

---

* This opinion was prepared by Justice Buckley while assigned to the Illinois Appellate Court, First District.

about 12:30 a.m. he was walking in the vicinity of 3133 West Roosevelt Road, Chicago, Illinois. Complainant met and walked with an acquaintance known as "Jap." At this time, defendant walked up to him, pushed him in the chest, and brandished a knife. Defendant said only, "I want to see you" and then slashed Pickens' left cheek with the knife. Pickens also alleged that defendant took money that defendant claimed Pickens owed him. Pickens ran home, called the police, and subsequently accompanied the police to defendant's home.

Officer Carano testified that he contacted Pickens pursuant to his complaint of an armed robbery. At defendant's apartment, Carano and his partner arrested defendant and advised him of his rights pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. According to Officer Carano, after being advised of his rights, defendant made a voluntary statement that he had been involved in a fight with Pickens, that he did not take any money, and that he had no knife. Defendant explained that he cut Pickens' face when he punched him while wearing a ring.

Defendant testified that he met Pickens walking down the street at about 12:30 a.m. on September 26, 1977. They began to quarrel. Defendant claimed Pickens had a broken pop bottle behind his back and attempted to cut him with the bottle. Defendant then hit Pickens cutting Pickens' face with his ring.

On cross-examination the prosecutor asked defendant if he ever mentioned Pickens' broken bottle at any time during his post-arrest statement to Investigator Carano. Defendant testified that he did not mention the broken bottle to Carano.

Henrietta Trumbull, defendant's mother, also testified and upon recross-examination claimed that her son did tell Carano that Pickens had a broken bottle in his hand.

At this point, the State recalled Officer Carano and completed impeachment regarding the broken bottle. Carano said that defendant made no mention of the bottle in his post-arrest statement.

During closing argument and rebuttal, the State commented upon defendant's failure to tell the police Pickens possessed a broken bottle. The prosecutor urged that defendant's credibility had been impeached by not telling this exculpatory story before trial.

On appeal defendant contends that the State improperly: (1) cross-examined defendant regarding his failure to mention the bottle; (2) introduced Carano's testimony of defendant's post-arrest silence; and (3) commented upon same in closing arguments all in contravention of the rule enunciated in *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240.

We find *Doyle* distinguishable from the instant case and affirm the trial court.

In *Doyle* the United States Supreme Court held that due process precludes the state from impeaching defendant's exculpatory story offered for the first time at trial by cross-examination on his failure to offer that explanation to police as an arrestee advised of his *Miranda* rights. The court found that under these circumstances silence is "insoluably ambiguous" since it may constitute an invocation of the arrestee's fifth amendment right to silence rather than a tacit admission of no defense to incriminating circumstances. The *Doyle* court felt *Miranda* warnings contain an implied assurance that an arrestee's silence cannot be used to jeopardize his chances at trial or destroy strategies saved for trial.

The crucial distinction in the instant case is that defendant did not remain silent after arrested and advised of his rights. Instead, in response to a general question from Officer Carano as to his account of the incident, defendant gave a full and meaningful response.

There has been concern as to whether *Doyle* overrules prior Illinois cases holding that where an arrestee does not remain completely silent, his failure to offer an exculpatory story to the police may be used for impeachment purposes. See, *e.g.*, *People v. Queen* (1974), 56 Ill. 2d 560, 310 N.E.2d 166; *People v. Allen* (1976), 37 Ill. App. 3d 619, 346 N.E.2d 486; *cert. denied* (1977), 430 U.S. 956, 51 L. Ed. 2d 806, 97 S. Ct. 1603; *People v. Kent* (1973), 15 Ill. App. 3d 523, 305 N.E.2d 42.

A thorough review of the Illinois decisions subsequent to *Doyle* convinces us that this rule has continuing vitality. In *People v. Robinson* (1976), 44 Ill. App. 3d 447, 358 N.E.2d 43, the court intimated this line of cases was still good law but distinguished that situation from *Doyle*. Several other cases, however, expressly reaffirm the rule. *People v. Henson* (1978), 58 Ill. App. 3d 42, 373 N.E.2d 852; *People v. Szabo* (1977), 55 Ill. App. 3d 866, 371 N.E.2d 117; *People v. Eubanks* (1977), 55 Ill. App. 3d 492, 371 N.E.2d 92.

■■ Defendant was confronted with allegations that might have supported his arrest and prosecution for the felonies of aggravated battery and armed robbery (Ill. Rev. Stat. 1977, ch. 38, pars. 12—4(b)(1) (knife), 18—2 (robbery at knife-point)). In his statement to police he made exculpatory claims that he neither possessed a knife nor robbed complainant. He further alleged that he cut complainant when he punched Pickens with his "ring hand." Under these circumstances it would clearly have been logical and expected that defendant mention Pickens' alleged provocative attempt to cut him with a broken bottle in order to negate all criminal liability.

■■ Defendant was properly impeached both as to his omission of mentioning the bottle in his post-arrest statement and as to the

inconsistency between his account of his post-arrest statement and his mother's account. Officer Carano was properly recalled to complete this impeachment and we also find there was no error committed in the State's closing arguments pertaining to legitimate inferences flowing from such impeachment of defendant's credibility. *People v. Queen* (1974), 56 Ill. 2d 560, 310 N.E.2d 166; *People v. Mitchell* (1975), 35 Ill. App. 3d 151, 341 N.E.2d 153.

Defendant's reliance on *People v. Robinson* (1976), 44 Ill. App. 3d 447, 358 N.E.2d 43, is misplaced. *Robinson* is distinguishable from the instant case because there defendant expressly invoked his right to remain silent after making a partial statement to the police. Robinson was arrested with a "smoking gun" in his hand and informed of his rights. He told police, "I know my rights. I did it, but I'm not going to tell you why." At trial defendant claimed he had acted in self-defense. Cross-examination by the State concerning his failure to tell police this exculpatory story was held to be error.

> "[A] person under arrest does not have to refrain from saying anything in order to preserve his fifth amendment rights. *It is his privilege to stop at any point during custodial interrogation to assert his rights.* By telling the police that he shot the deceased, the defendant was merely stating the obvious, and he did not waive or forfeit all his fifth amendment rights by this admission." (Emphasis added.) 44 Ill. App. 3d 447, 449, 358 N.E.2d 43, 45.

In the present case it was clear that defendant did not invoke his fifth amendment rights but chose to give a lengthy explanation of his account of the incident to police. While his privilege against self-incrimination was not inextricably waived, it could only be invoked by defendant's positive affirmation or assertion. There is no evidence that defendant invoked his right to silence after his initial waiver via his statement. Accordingly, the rule in *Robinson* is inapplicable.

For the aforementioned reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McGLOON and O'CONNOR, JJ., concur.