THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRY CHRISWELL, Defendant-Appellant.

Second District   No. 83—1142

Opinion filed May 21, 1985.

G. Joseph Weller and William A. Delaney II, both of the State Appellate Defender's Office, of Elgin, for appellant.

Daniel Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Sally A. Swiss, both of the State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

Following a jury trial in the circuit court of Winnebago County, defendant, Terry Chriswell, appeals from his conviction of burglary (Ill. Rev. Stat. 1983, ch. 38, par. 19—1). Defendant presents four issues for review in this court: (1) whether the defendant's constitutional right to remain silent was violated when the prosecutor elicited testimony regarding the defendant's post-arrest silence; (2) whether the prosecutor's cross-examination of defendant regarding a certain bill of sale which defendant had taken to his attorney constituted a violation of the attorney-client privilege; (3) whether Officer Wolford's destruction of certain longhand notes deprived defendant of his constitutional and statutory rights to pretrial discovery and cross-examination; and (4) whether this cause should be remanded for findings of fact regarding a potential conflict of interest in the public defender's office.

On May 12, 1983, James Coffman went to work at the Ed Thorne Hardware Store, located at 7928 North Second Street, Machesney Park, at approximately 5:45 a.m. When he arrived there he discovered that during the night there had been a forcible break-in at the store, and several things had been stolen from within. Among these items were several high caliber handguns which were being held for sale in a locked glass gun cabinet. Some of the glass had been broken out of the cabinet by the burglar, apparently in order to gain access to the handguns. Police were called, and a triangular shard of glass was discovered inside the gun cabinet upon which three distinct fingerprints were found. The prints appeared to be very fresh. Sheriff's deputy Stephanie Eisenach testified that she had seen a car, whose plates were registered to Terry Chriswell, parked on a service drive about a block and a half south of Thorne's between 10 p.m. and midnight on May 11, 1983. She determined that Chriswell's home address was nowhere near to where she saw the car parked. Suspecting that Chriswell might have been involved in the burglary, the sheriff's department compared certain known fingerprints of Terry Chriswell which were on file at the sheriff's department with the three latent prints left on the piece of glass. A positive match of all three fingerprints was made.

On June 17, 1983, approximately five weeks after the burglary, defendant was picked up by the police and was advised of his *Miranda* rights. Defendant signed a written waiver-of-rights form. He was then questioned about his car's being in the vicinity of the burglary and also about when he had last been at Thorne's before the burglary date. According to Officer Wolford, who conducted the initial

interview, Chriswell denied the burglary and stated that he had not been to Thorne's for some time. During a later interview on June 23, 1983, with another officer, defendant stated that he had not been to the burglarized store for over a year and a half. Defendant also informed Officer Wolford that he had sold his car before the date of the burglary but he did not know to whom he had sold it. Wolford then asked whether defendant had transferred the plates, and defendant responded that he thought he had. Wolford then informed defendant that the vehicle was still registered in his name, and defendant did not respond.

On cross-examination, Officer Wolford testified that the interview with defendant lasted approximately 45 minutes to an hour, and that he had prepared the report of the interview four days later from certain hand-written notes taken during the interview. After preparing the report, Wolford destroyed his notes.

Following the presentation of the State's witnesses, two certified documents from the Secretary of State were admitted into evidence. One was a certified copy of an application for 1983 license filled out by the defendant. The license was issued October 5, 1982. The other document, dated July 26, 1983, was a certified copy of the title history to the vehicle in question and contained no evidence of a sale of the vehicle by Terry Chriswell.

Defendant presented four witnesses in his behalf. Carol Chriswell, defendant's sister, testified that she purchased the vehicle in question from Terry on April 22, 1983, about three weeks before the date in question. She stated that Terry removed the license plates at that time. Carol further stated that she did not register the vehicle right away. Carol Kilpin, a notary public and friend of defendant, testified that she notarized a bill of sale for the car on April 22, 1983. A bill of sale was admitted into evidence. Betty Chriswell, defendant's mother, testified that on the night in question Terry was at home with her.

Defendant testified that on the evening in question he was at home. He corroborated his sister's testimony regarding the sale of the vehicle, and the fact that he threw the license plates away at his sister's house. Defendant also testified that the last time he had been at Thorne's was around the first week in May, when he went there to buy some fishing lures. He stated he may have passed the gun case on his way to the fishing department. Regarding his interviews with the police, defendant stated he told the officers he had not been to Thorne's for "a few months anyway." He denied his involvement in the instant burglary, but acknowledged a previous conviction for burglary in 1979.

On cross-examination, defendant was asked when he first brought the bill of sale to his lawyer's office. Defendant responded, over his attorney's objection, that he brought it to his attorney about one week prior to trial. He was also asked during cross-examination whether he told the police during his interviews about his alibi on the evening in question. Defendant first responded, "I don't remember if that ever came up or not." However, later he stated, "I believe I could have told them that."

Defendant was subsequently convicted of burglary, and after a hearing in aggravation and mitigation, he was sentenced to a term of six years' imprisonment in the Department of Corrections. This appeal follows.

■ Defendant first contends that his constitutional rights to silence and to due process were violated when the State was permitted to elicit testimony regarding defendant's post-arrest silence. Specifically, defendant argues that his constitutional right not to incriminate himself was violated when Officer Wolford was permitted to testify as to defendant's silence when confronted with the fact that the suspect vehicle was still registered in defendant's name. Defendant also argues that his due process rights were violated when the State was permitted to cross-examine defendant regarding his failure to inform the authorities of his alibi during the post-arrest interviews. (See *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240; *People v. Rehbein* (1978), 74 Ill. 2d 435, 386 N.E.2d 39, *cert. denied* (1979), 442 U.S. 919, 61 L. Ed. 2d 287, 99 S. Ct. 2843.) Defendant claims that in the absence of a direct inconsistency between the exculpatory story offered at trial and defendant's pretrial statements, the cross-examination was impermissible.

Defendant's initial argument regarding the license plate registration is premised upon the theory that his silence in the face of Officer Wolford's statement was consistent with the exercise of his fifth amendment rights and merely demonstrated his desire to remain silent during police questioning. Although defendant has cited the Federal case of *United States v. Williams* (6th Cir. 1981), 665 F.2d 107, as support for his position, this case is not binding on us. Illinois cases dealing with this issue have held that where, after being advised of the *Miranda* warnings, a defendant chooses to give an explanation to the police regarding a certain subject matter, the defendant has not invoked his fifth amendment rights on that matter. (See *People v. Rickard* (1981), 99 Ill. App. 3d 914, 917-18, 425 N.E.2d 1317 (defendant's statement, "I won't tell you," was construed as not being an indication of the desire to remain silent); see also *People v. Trumbull*

(1978), 67 Ill. App. 3d 262, 265, 384 N.E.2d 842.) In such a case, the mere refusal to answer a single question is not construed as an expression of the defendant's desire to remain silent. (*People v. Rickard* (1981), 99 Ill. App. 3d 914, 917, 425 N.E.2d 1317.) Rather, "a more positive manifestation of a desire to invoke the protections of the fifth amendment is required ***." *People v. Rickard* (1981), 99 Ill. App. 3d 914, 917-18, 425 N.E.2d 1317; see also *People v. Trumbull* (1978), 67 Ill. App. 3d 262, 265, 384 N.E.2d 842.

We believe the foregoing authorities control the instant case. Defendant here did not invoke his right to silence when he was questioned by Officer Wolford about the alleged sale and registration of the vehicle in question. To the contrary, defendant indicated a willingness to talk about this subject and told the officer details as to when he sold the vehicle, that it was a cash sale, that he could not remember to whom he had sold it, and that he thought he had transferred the plates on the car. In view of defendant's substantial statement on this matter, it cannot be said that the defendant invoked his right to remain silent on this subject. It is undisputed that defendant was advised that he had a right to silence, that he understood those rights, and that he subsequently signed a waiver-of-rights form and spoke with the police. Since it was proper for defendant's statements to be presented to the jury, we believe that the surrounding circumstances tending to show the reliability of those statements was also properly before the jury. (See *People v. Gan* (1979), 76 Ill. App. 3d 961, 963, 395 N.E.2d 411.) "Once *Miranda* rights are voluntarily waived the jury may consider the entire communicative process in order to judge the meaning and accuracy of the volunteered statements." (76 Ill. App. 3d 961, 963, 395 N.E.2d 411.) Thus, we conclude that the officer's reference to defendant's silence regarding the license plate registration was not error.

The second prong of defendant's first argument is that the prosecutor's cross-examination of defendant regarding his failure to mention his alibi contravened the rule enunciated in *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240. The State again argues that comment upon this omission was proper because defendant had given a substantive statement to the police.

In *Doyle*, the United States Supreme Court held that if the arrested party had been warned of his right to remain silent, it is fundamentally unfair and a deprivation of due process to utilize the silence which follows and to impeach the accused's alibi subsequently offered at trial for the first time. The court reasoned that every post-arrest silence is "insolubly ambiguous" because "[s]ilence in the wake of

[*Miranda*] warnings may be nothing more than the arrestee's exercise of [his] *Miranda* rights." *Doyle v. Ohio* (1976), 426 U.S. 610, 617, 49 L. Ed. 2d 91, 97, 96 S. Ct. 2240, 2244.

The rule established in *Doyle* does not apply to cross-examination relating to prior inconsistent statements. (*Anderson v. Charles* (1980), 447 U.S. 404, 408, 65 L. Ed. 2d 222, 226, 100 S. Ct. 2180, 2182; *People v. Rehbein* (1978), 74 Ill. 2d 435, 443, 386 N.E.2d 39, 42-43; *In re S.L.C.* (1979), 75 Ill. App. 3d 473, 476, 394 N.E.2d 687, 689; *People v. Eubanks* (1977), 55 Ill. App. 3d 492, 495, 371 N.E.2d 92, 94.) The reason for this exception is that "[s]uch questioning makes no unfair use of silence, because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all." *Anderson v. Charles* (1980), 447 U.S. 404, 408, 65 L. Ed. 2d 222, 226, 100 S. Ct. 2180, 2182.

In the instant case, the defendant gave a partial statement in which he denied his involvement in the instant offense and gave a substantive statement regarding his ownership of the vehicle which was observed near the scene at the time of the burglary. However, the record does not indicate whether defendant was ever questioned about his whereabouts at the time and date in question. Defendant testified that he could not recall whether the police ever asked him where he was on May 11, although on redirect examination he stated he "could have told them" he was at home. No rebuttal testimony was offered by the State to show that in fact defendant had been asked about his whereabouts. Thus, it is manifest that there was no inconsistency between the substantive statement which was given by defendant and defendant's subsequent trial testimony regarding his alibi. In both versions, the defendant claimed his innocence and his lack of any knowledge of the incident in question.

Case law is conflicting on the question whether *Doyle* should be applied where a defendant gives a statement to the police, but the substance of that statement is not inconsistent with defendant's subsequent trial testimony. In *People v. Green* (1979), 74 Ill. 2d 444, 386 N.E.2d 272, the court found error in cross-examination regarding the defendant's failure to advance an exculpatory story after his arrest where the defendant's trial testimony was not inconsistent with the statements given at the time of his arrest. At his trial for burglary, defendant stated that he entered a building only to find shelter for his family, while he told the police that there was one other man in the house and that no car was involved. The court noted that while there was some inconsistency concerning the involvement of a car, that in-

consistency did not impeach, through its inconsistency, the defendant's shelter defense offered at trial. Similarly, in *People v. Beller* (1979), 74 Ill. 2d 514, 386 N.E.2d 857, the court held that the prosecution had improperly commented upon a defendant's failure to tell police his exculpatory story upon arrest. In so holding, the court noted that the pretrial statement the defendant made in that case was not inconsistent with his subsequent trial testimony. The court stated:

"It is this ambiguity: the absence of the direct contradiction or manifest inconsistency \*\*\* which precludes the additional comment by the prosecutor referring to defendant's failure to ask about Walker. That ambiguity, the reasons for which are uncertain, is in its effect the comment upon silence forbidden by *Doyle*. When a defendant's earlier and later statements are manifestly inconsistent, the prosecutor may properly impeach the defendant by means of the earlier statement, and he derives no added and prejudicial advantage from establishing that when the defendant made the first statement he failed to make the contradictory second statement." (74 Ill. 2d 514, 524-25, 386 N.E.2d 857.)

See also *People v. Rehbein* (1978), 74 Ill. 2d 435, 386 N.E.2d 39, *cert. denied* (1979), 442 U.S. 919, 61 L. Ed. 2d 287, 99 S. Ct. 2843, finding no *Doyle* violation where defendant's exculpatory trial testimony totally contradicted a prior exculpatory version given to police; *People v. Timmons* (1983), 114 Ill. App. 3d 861, 865-67, 449 N.E.2d 1366, holding that where a defendant has been only partially silent after arrest, the crucial inquiry is whether there is a "threshold inconsistency" between the defendant's post-arrest statements and his subsequent trial testimony.

Contrary to these cases, however, is a line of cases, cited by the State, holding that where a defendant has not remained completely silent, the *Doyle* rule does not apply. In *People v. Henson* (1978), 58 Ill. App. 3d 42, 45-46, 373 N.E.2d 852, the court stated:

"We do not believe the *Doyle* court intended to lay down a blanket prohibition on silence of every variety. It prohibits comment or cross-examination on refusal to make any statement except a general denial, but does not go so far as to say that the prosecutor is barred from comment on a partial statement. 'Silence' is one of those absolute words like 'unique' which admit of no degrees.

\* \* \*

*Doyle* did not bar silence under all circumstances, only the silence engendered, if at all, by *Miranda*. Implicit in the doctrine of *Miranda* is the waiver of the right of silence, and if it is

properly waived and a statement given, then the State may use that statement against the defendant in any legitimate way.

We therefore conclude that *Doyle* bars comment and cross-examination only as to silence claimed as a result of *Miranda* warnings, but does not bar comment on statements given after such warning."

(See also *People v. Hinson* (1979), 70 Ill. App. 3d 880, 885-86, 388 N.E.2d 899; *People v. Trumbull* (1978), 67 Ill. App. 3d 262, 263-65, 384 N.E.2d 842; *People v. Eubanks* (1977), 55 Ill. App., 3d 492, 494-95, 371 N.E.2d 92.) A close examination of these cases, however, reveals that in *Hinson, Eubanks* and *Henson*, the pretrial statements which were made by the respective defendants were in contradiction to their later trial testimony. In *Trumbull*, the defendant had give i police a purportedly complete statement of the events leading up to his arrest for battery. However, at trial, defendant testified as to additional facts justifying his actions on a self-defense theory. Thus, to this extent, the defendant's trial testimony was inconsistent with his original statement to police.

After reviewing the foregoing authorities, we conclude that the State's cross-examination of defendant regarding his failure to inform police of his alibi was error. In light of the supreme court's decisions in *Green, Beller* and *Rehbein*, and after examining the factual settings of those cases which seemingly hold to the contrary, we conclude that a defendant may not be cross-examined regarding his post-arrest silence unless the defendant's trial testimony is inconsistent with the pretrial statements that were made to police. In the instant case, no inconsistency is manifest. Accordingly, the reference to silence was error.

■ Nevertheless, we find the error harmless under the facts of this case. (See *People v. Green* (1979), 74 Ill. 2d 444, 386 N.E.2d 272; *People v. Beller* (1979), 74 Ill. 2d 514, 386 N.E.2d 857.) The evidence of defendant's guilt was overwhelming. Defendant's fingerprints, which were determined to be fresh, were discovered on a shard of broken glass recovered from the gun cabinet. A vehicle which was observed in the vicinity of the burglary at the time in question was registered to defendant, despite defendant's pretrial claim that the vehicle had previously been sold and defendant's license plates removed and thrown away. Additionally, defendant's credibility was severely undercut by other inconsistencies between his pretrial statements and his subsequent trial testimony. In his statement to police, defendant said he had sold the vehicle prior to the burglary, but that he did not know to whom he had sold it. At trial, defendant testified that he had

sold the vehicle to his sister. Defendant also told police during an interview that he had not been to the burglarized store for over a year and a half. To another officer he said he had not been there "for some time." However, at trial, defendant stated that he was last at Thorne's to buy fishing lures about a week prior to the break-in. In light of all this evidence indicating defendant's guilt of the instant offense, the prosecutor's reference to defendant's silence regarding his alibi was, at most, harmless and is not cause for reversal. We note that defendant has not challenged the sufficiency of the evidence on appeal.

■ Defendant next argues that his attorney-client privilege was violated when the prosecutor was permitted to cross-examine him regarding the first time he brought the bill of sale for the vehicle to his attorney's office. On direct examination, defendant had testified that he had a notarized bill of sale for the subject vehicle indicating that defendant had in fact sold the vehicle to his sister prior to the burglary date. The bill of sale was introduced into evidence at trial, and was offered to corroborate both defendant's testimony and that of his sister. On cross-examination, over his attorney's objection, defendant revealed that this bill of sale had not been brought to his attorney until about a week prior to trial. Thus, the implication was that the bill of sale was a piece of recently manufactured evidence.

The purpose of the attorney-client privilege is to encourage and promote full and frank consultation between the client and his legal advisor by removing the fear of compelled disclosure of information. (*Consolidation Coal Co. v. Bucyrus-Eire Co.* (1982), 89 Ill. 2d 103, 117-18, 432 N.E.2d 250.) The privilege applies only to *communications* made by the client to the attorney. (*People v. Adam* (1972), 51 Ill. 2d 46, 49, 280 N.E.2d 205, *cert. denied* (1972), 409 U.S. 948, 34 L. Ed. 2d 218, 93 S. Ct. 289.) The essence of privileged communications between attorney and client is its confidentiality. (*Monier v. Chamberlain* (1966), 66 Ill. App. 2d 472, 213 N.E.2d 425, *aff'd* (1966), 35 Ill. 2d 351, 358, 221 N.E.2d 410.) Because of the privilege's potential to insulate so much material from the truth-seeking process, it should be limited to the extent reasonably necessary to achieve its purpose. *Consolidation Coal Co. v. Bucyrus-Eire Co.* (1982), 89 Ill. 2d 103, 118, 432 N.E.2d 250.

On the basis of these authorities, we conclude that the date on which the defendant brought the bill of sale to his attorney is not protected by the attorney-client privilege because it does not involve a communication. In this respect, this case is similar to *People v. Adam* (1972), 51 Ill. 2d 46, 49, 280 N.E.2d 205, where certain facts sur-

rounding the client's employment of her attorney (that she called him, spoke with him, arranged to meet with him, and retained him) were deemed not to constitute communications and thus were not protected by the attorney-client privilege. Thus, we find no error on this basis.

We note that the case relied upon by defendant as support for his position, *Dietrich v. Mitchell* (1867), 43 Ill. 40, is factually distinguishable from the instant case. In *Dietrich*, the question was whether an attorney could be compelled to testify as to certain knowledge which he gained through his professional relation with his client. This question is not presented in the instant case.

■ Defendant next contends that Officer Wolford's intentional destruction of his notes on his interview with defendant constituted a violation of Supreme Court Rule 412(a)(ii) (87 Ill. 2d R. 412(a)(ii)). Defendant also contends that the State's failure to provide the notes hampered his cross-examination of Wolford by eliminating any possibility that Wolford would be impeached by his notes. Thus, defendant concludes that a new trial is mandated and urges this court to rule that Officer Wolford's testimony be excluded upon retrial as a sanction for the discovery violation. (See 87 Ill. 2d R. 415(g).) We find this contention to be without merit.

Supreme Court Rule 412(a)(ii) provides, in pertinent part:

> "(a) Except as is otherwise provided in these rules as to matters not subject to disclosure and protective orders, the State shall, upon written motion of defense counsel, disclose to defense counsel the following material and information within its possession or control:
>
> * * *
>
> (ii) any written or recorded statements and the substance of any oral statements made by the accused or by a codefendant, and a list of witnesses to the making and acknowledgment of such statements."

Compliance with this rule is mandatory for the purpose of avoiding surprise, unfairness, and inadequate preparation to the defendant and is excused only if the State is unaware of the existence of the statement prior to trial and cannot become aware of it in the exercise of due diligence. (*People v. Brown* (1982), 106 Ill. App. 3d 1087, 1092, 436 N.E.2d 696.) This rule governing disclosure by the State of statements made by a criminal defendant carries no requirement of relevancy, and the State's duty to disclose does not depend upon its independent evaluation of the relevance of the subject statements, all of which must be disclosed prior to trial. *People v. Caliendo* (1980), 84 Ill. App. 3d 987, 996, 405 N.E.2d 1133.

In *People v. Szabo* (1983), 94 Ill. 2d 327, 345, 447 N.E.2d 193, relied upon by defendant here, the court held that under Rule 412(a)(i), the defendant was entitled to have the assistant State's Attorney's notes of some 20 interviews with the key State's witness produced for *in camera* inspection by the circuit court, and to the disclosure of any unprivileged, substantially verbatim statements they contained for possible use in impeaching that witness' testimony. The court further held that the assistant's action in destroying the notes deprived defendant of that right. (94 Ill. 2d 327, 346, 447 N.E.2d 193.) In reaching this result, however, the court distinguished the situation in *Szabo* from that found in *People v. Bassett* (1974), 56 Ill. 2d 285, 307 N.E.2d 359. In *Bassett*, the prosecution's rough notes of interviews with witnesses were destroyed following the preparation of a number of white cards, intended for use by the State at trial. The court concluded that Rule 412 required disclosure of only the white cards, because they contained the substance of the witnesses' pretrial statements, and were thus an adequate substitute for the original notes. (56 Ill. 2d 285, 290, 292, 307 N.E.2d 359.) The *Szabo* court noted that the situation in *Bassett* could not be compared to that found in *Szabo*, since an eight-page nonverbatim outline could not be considered an adequate substitute for some 30 hours of interviews with the State's key witness. *People v. Szabo* (1983), 94 Ill. 2d 327, 346, 447 N.E.2d 193.

The instant case is distinguishable from *Szabo* in several respects. First, the statements in *Szabo* were those of the State's key witness, the nondisclosure of which could realistically hamper defendant's efforts to cross-examine that witness at trial. In the instant case, the statements which defendant claims were not disclosed were those of the defendant himself, and not the State's key witness, Officer Wolford. Thus, defendant's argument on appeal that the longhand notes of defendant's statements could have aided defendant in impeaching Officer Wolford's trial testimony is a *non sequitur*. Officer Wolford's pretrial statements were not the subject of the longhand notes, contrary to the situation in *Szabo*, and thus nondisclosure to defendant likely had little impact on the defendant's ability to effectively cross-examine Wolford at trial. Second, it is clear that, contrary to the situation in *Szabo*, the State did disclose the substance of defendant's pretrial statements, so that no unfair advantage likely existed. Defendant was interviewed for a total of 45 minutes, and this interview was reduced to a one- to two-page report. We believe this report was an adequate substitute for the notes. Further, defendant does not argue that the State used any alleged statement which was

not contained in the report, nor does he argue that he was taken by surprise by the officer's testimony. Under these circumstances, we conclude that the *Szabo* decision is inapposite. Rather, the instant case more closely resembles the case of *People v. Tyler* (1984), 128 Ill. App. 3d 1080, 1095-96, 471 N.E.2d 968, wherein this court held that before a due process violation will be found, the defendant must show that the destruction of notes was intentional *and* that the destroyed evidence was exculpatory in nature. The defendant here has failed to demonstrate that the destroyed notes contained any exculpatory information. Thus, we conclude no error occurred on this basis.

■ Finally, defendant argues that this case should be remanded for a factual determination as to whether the public defender's office was hampered by a conflict of interest in its representation of defendant. At the trial of this cause in September 1983, defendant was represented by Mr. Gary Pumilia, in his capacity as public defender of Winnebago County, and by Mr. Edward Light, assistant public defender. Following defendant's conviction and prior to sentencing, the public defender's office was allowed to withdraw from the case based upon an allegation of incompetence by defendant. Subsequently, Mr. Gordon Ring was appointed to represent defendant during the posttrial and sentencing proceedings.

At the sentencing hearing, the State presented the testimony of George Robert Cook in aggravation. Mr. Cook testified to an unrelated incident in which he witnessed defendant "jousting" with another man outside a house, and then subsequently picking up a gun and firing it four times into the air. It was discovered at the hearing that George Cook was currently in jail for grand theft and was being represented by Mr. Randy Cook in his capacity as an assistant public defender. Randy Cook had been appointed to represent George Cook sometime in late August or early September 1983.

On appeal, defendant contends that the public defender's office was representing conflicting interests when it represented both defendant during trial and, in an unrelated matter, represented a witness who testified against defendant at the sentencing hearing. On this basis, defendant requests that we remand the cause for a factual finding to determine whether the public defender's office was hampered by this conflict in its representation of defendant at trial.

The right of a defendant to have the undivided loyalty of his counsel is implicitly guaranteed under the sixth and fourteenth amendments. (*Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457.) In Illinois, where a defense counsel's past or present commitments to others involve interests which potentially conflict

with those of the defendant, a *per se* rule of reversal has been applied without the necessity of a showing of any actual prejudice resulting thereby. (*People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441; *People v. Kester* (1977), 66 Ill. 2d 162, 361 N.E.2d 569.) It is a generally recognized rule that if an attorney is disqualified by reason of a conflict of interest, no other partner or associate of his firm may continue with the representation. (*People v. Fife* (1979), 76 Ill. 2d 418, 425, 392 N.E.2d 1345.) However, in *People v. Robinson* (1979), 79 Ill. 2d 147, 158-59, 402 N.E.2d 157, our supreme court rejected the notion that a public defender's office is to be treated as a law firm or an "entity" in considering a conflict-of-interest claim. The court held that the disqualification of one assistant public defender due to conflict of interest will not necessarily disqualify all members of the public defender's office. (*People v. Robinson* (1979), 79 Ill. 2d 147, 158-59, 402 N.E.2d 157; *People v. Miller* (1980), 79 Ill. 2d 454, 461, 404 N.E.2d 199.) Thus, in a given situation, where one assistant may not effectively represent two competing interests, two assistants might be able to do so. In determining whether separate assistants can properly represent competing interests, courts are to apply the general guidelines enunciated in prior Illinois and United States Supreme Court decisions on the subject of conflicts of interest. (See cases cited in *People v. Miller* (1980), 79 Ill. 2d 454, 463, 404 N.E.2d 199.) Rather than applying a *per se* rule, thereby disqualifying an entire public defender's office whenever one of its members is confronted with a conflict, a case-by-case inquiry is contemplated whereby it is determined whether any facts peculiar to the case preclude the representation of competing interests by separate members of the public defender's office. 79 Ill. 2d 454, 462, 404 N.E.2d 199.

In accordance with these authorities, we conclude that there are no facts in the instant case which would preclude defendant's representation by one member of the public defender's office and George Cook's representation by another member of that office. This is not a case where the two interests involved are diametrically opposed in the same or in a related matter. (See *People v. Lackey* (1980), 79 Ill. 2d 466, 405 N.E.2d 748 (where the public defender's office represented both the parents and the child in a termination-of-parental-rights case); *People v. Robinson* (1979), 79 Ill. 2d 147, 402 N.E.2d 157 (where the public defender represented both the defendant and the victim in a burglary case); see also *People v. Arreguin* (1981), 92 Ill. App. 3d 899, 416 N.E.2d 402.) In the case at bar, the interests of George Cook were in an unrelated matter in which defendant played no part. Thus, George Cook likely would have no interest or concern

in the length of the sentence which defendant might receive because of his testimony. (See *People v. Robinson* (1979), 79 Ill. 2d 147, 160, 402 N.E.2d 157.) Further, there is no indication in the record that defendant's attorney tempered his representation of defendant's interests during trial (see *People v. Miller* (1980), 79 Ill. 2d 454, 463, 404 N.E.2d 199), nor does defendant point to any such instance in his brief on appeal. The witness in question was not called during trial when the public defender was representing defendant, and defendant was represented by private counsel during the sentencing hearing so that cross-examination of Mr. Cook was in no way hampered by the alleged conflict. Under these circumstances, we conclude that no conflict existed in the situation here, and that accordingly remandment is unnecessary.

For all these reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

STROUSE and LINDBERG, JJ., concur.