THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CARL BRADLEY, Defendant-Appellant.

First District (1st Division)   No. 1—87—2137

Opinion filed December 18, 1989.

Michael J. Pelletier and Janice Lynn Triptow, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Following a jury trial, the defendant, Carl Bradley, was found guilty of the offense of possession of a stolen motor vehicle and was sentenced to five years' imprisonment. Defendant now appeals from that conviction.

On appeal, defendant contends that (1) his fifth amendment right to remain silent and Illinois' evidentiary rule prohibiting the State from commenting on his post-arrest silence were violated; (2) there was error where the jury was not instructed that the State bore the burden of proving that the defendant intended to permanently deprive the victim of the use or benefit of his automobile; (3) he received ineffective assistance of counsel where his attorney did not subpoena certain witnesses who would have testified in his favor; and (4) the statute under which he was convicted is unconstitutional in that it makes a first conviction for possession of a stolen motor vehicle a greater class offense than the more serious offense of auto theft.

At trial, Larry Gordon testified that on September 13, 1986, his wife, Zeolia, owned a 1984 Lincoln Continental automobile. On that date Gordon drove his wife's car to a two-story brick building at Kedzie Avenue and Washington Boulevard in Chicago, where he was scheduled to work painting the building's second-floor windows. At approximately 8 p.m., when he was preparing to stop work for the day, the defendant, Carl Bradley, approached him and the two struck up a conversation. The defendant's girl friend subsequently arrived bringing some sandwiches, and the three of them continued their conversation while eating the sandwiches. The defendant's girl friend left, and the two men continued to talk.

Gordon further testified that when he was getting ready to leave, he offered the defendant a ride and the defendant accepted. The two men drove in the 1984 Lincoln Continental to a nearby gas station where Gordon got out of his car with the keys, pumped for gas and paid for the gasoline. They next stopped at a liquor store where the defendant went in and purchased beer while Gordon waited in the car. Gordon drove the car around the corner, where he stopped the car near an alley. The two men sat in the automobile and talked as they drank several cans of beer and listened to the car radio. During this

time Gordon twice left the automobile to urinate in the alley. The first time he left the car he took his car keys with him. The second time he left the car, however, he did not remove the keys from the ignition. As he returned to the car, he observed the defendant driving the car away. Gordon stated he waited for approximately 15 to 20 minutes for the defendant to return. When he did not, Gordon telephoned his wife. Thereafter, Gordon's wife arrived in the couple's other automobile to pick up her husband. The two of them drove around the area for about 20 minutes looking for defendant. When they failed to find the defendant and their car, they returned home and called the police. The police came to the Gordon home, and Gordon filed a report that the automobile was stolen. Gordon further stated that he did not know the defendant's name or where the man lived. At the time the car was stolen, it was not insured since the policy had expired in June 1986.

Zeolia Gordon, the wife of Larry Gordon, testified that the 1984 Lincoln Continental which was stolen was purchased in November 1985 and was registered in her name. On September 13, 1986, her husband left their house in the morning with the car to go to work. Between 11 p.m. and 11:30 p.m. she received a phone call from her husband, who told her the car had been taken. She went to pick up her husband, and they drove around the area looking for the car. After searching unsuccessfully for the car, they proceeded home and notified the police. On September 16, 1986, she was called to the police station at Harrison and Kedzie in Chicago, where she identified her stolen automobile. The rear portion of the car was damaged.

Chicago police officer David Graney testified that he and his partner went to the Gordons' residence at approximately midnight on September 13, 1986. Graney's testimony and written report stated that Gordon told him that he was in a store when his car was stolen. Gordon further told the officer that the ignition was locked and that the keys were not in the vehicle.

Police officer Joseph Scardino and Officer Christopher Prendkowski both testified that they were working together driving an unmarked police car on the night of September 16, 1986. The police car they were using was equipped with a small mobile computer which could be used to check license plate and vehicle identification numbers. At about 10:30 p.m. they noticed a Lincoln Continental automobile which was blocking the entrance to an alley. A check of the license plate number of this automobile revealed that it was listed as stolen. As they passed the stolen automobile, a man and a woman got out of the car. The officers identified the man as the defendant. The officers further observed the two individuals go into an apartment

building. The officers kept a watch on the automobile in the hope that the defendant might return to it. Officers Scardino and Prendkowski further testified that after approximately 30 to 45 minutes, defendant again came out of the apartment building, entered the stolen automobile and began to drive away. The officers followed for a short distance until the defendant pulled over to the curb. The defendant was placed under arrest and informed of his rights and taken to the police station. In an interview at the police station, the officers further stated that the defendant told them that he had received the keys for the Lincoln Continental from the owner, who wished to dispose of it so that he might collect the insurance. When the defendant was asked why there were many other keys also on the key ring, the defendant did not respond.

# I

■■ The defendant first contends that the prosecution improperly brought out at trial that he had exercised his right to remain silent when questioned in police custody in violation of *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240. It is well established that use by the prosection of an arrestee's post-*Miranda* silence for impeachment purposes is improper. (*Doyle*, 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240; *United States ex rel. Allen v. Franzen* (7th Cir. 1981), 659 F.2d 745, *cert. denied* (1982), 456 U.S. 928, 72 L. Ed. 2d 444, 102 S. Ct. 1975; *People v. Krueger* (1980), 82 Ill. 2d 305, 412 N.E.2d 537; *People v. Green* (1979), 74 Ill. 2d 444, 386 N.E.2d 272; *People v. Tate* (1978), 63 Ill. App. 3d 119, 379 N.E.2d 693; *People v. Nolan* (1987), 152 Ill. App. 3d 260, 504 N.E.2d 205.) Illinois also recognizes an impropriety in drawing a negative inference from an accused's exercise of his right to remain silent, both because it impermissibly penalizes the accused for exercising his rights and because an accused's exercise of his right is not inconsistent with a claim of innocence. (*People v. Lewerenz* (1962), 24 Ill. 2d 295, 181 N.E.2d 99; *People v. McMullin* (1985), 138 Ill. App. 3d 872, 486 N.E.2d 412.) Further, the principles of *Doyle* apply even if the defendant remains only partially silent after his arrest and even if he does not take the stand at trial.

In the case at bar, two police officers testified that at the time of defendant's arrest, he was informed of his rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, including his right to remain silent. Subsequently, the defendant stated that he understood those rights and was transported to the police station. The officers testified that at the police station, the defendant

was taken to an interview room and one officer informed him that the vehicle in his possession at the time of his arrest was stolen. The defendant responded that it was not stolen. The defendant was then asked how he obtained the keys to the vehicle, and the defendant responded that he had obtained the keys from its owner, who wanted the car disposed of so that he might collect the insurance. The defendant was further asked why the owner had given him numerous other keys on the key ring along with the key to the automobile, and the defendant did not respond.

■ Illinois cases dealing with the issue raised here have held that where, after being advised of the *Miranda* warnings, a defendant chooses to give an explanation to the police regarding a certain subject matter, the defendant had not invoked his fifth amendment rights on that matter. *(People v. Chriswell* (1985), 133 Ill. App. 3d 458, 478 N.E.2d 1176; *People v. Rickard* (1981), 99 Ill. App. 3d 914, 425 N.E.2d 1317; *People v. Trumbull* (1978), 67 Ill. App. 3d 262, 384 N.E.2d 842.) In such a case, the mere refusal to answer a single question is not construed as an expression of the defendant's desire to remain silent. *(Rickard,* 133 Ill. App. 3d 358, 425 N.E.2d 1317.) Rather, "a more positive manifestation of a desire to invoke the protections of the fifth amendment is required" *(Rickard,* 99 Ill. App. 3d at 917-18, 425 N.E.2d at 1320). See also *People v. Trumbull,* 67 Ill. App. 3d 262, 384 N.E.2d 842.

Recently, in *People v. Landgham* (1989), 182 Ill. App. 3d 148, 157, 537 N.E.2d 981, the defendant was convicted of murder and on appeal contended that his fifth amendment right to remain silent was violated by the police officer's testimony as to defendant's response to a question during interrogation that he did not "want to talk about that." This court held that there was no fifth amendment violation since the defendant was given *Miranda* warnings prior to his refusal to answer the question, and of the many questions defendant was asked about the murder victim and the circumstances surrounding the murder, the defendant refused to answer only an inquiry concerning his assault of another boy other than the victim. The court determined that under such circumstances it was reasonable to conclude that the defendant was not expressing a desire to remain silent.

■ It is our opinion that the foregoing authorities control the instant case. The record establishes that the defendant here did not remain silent, but offered an explanation to the police officers for his possession of both the automobile and the keys. The defendant did not express an unwillingness to speak. Although the defendant was being held at the police station when he declined to answer the question, he

was given his *Miranda* warnings and he makes no claim that he did not comprehend those warnings or that he was coerced or under duress. After considering the entire colloquy here, we cannot conclude that the defendant was expressing a desire to remain silent as was outlined in *Doyle*. Therefore, we hold that the introduction of the police officer's testimony of the statements made by the defendant and the circumstances surrounding it was proper.

■ Furthermore, even if we assume defendant's contention has merit, we believe that evidence of his statements did not contribute to his conviction. (See generally *People v. Knippenberg* (1977), 66 Ill. 2d 276, 362 N.E.2d 681.) The record discloses overwhelming evidence of defendant's guilt. We therefore conclude that admission of the statement was harmless beyond a reasonable doubt. See *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824; *People v. Green* (1979), 74 Ill. 2d 444, 386 N.E.2d 272; *People v. Beller* (1979), 74 Ill. 2d 514, 386 N.E.2d 857.

## II

■ Defendant next contends that the jury was not properly instructed since they were not instructed that in order to find the defendant guilty he had to have possession of the stolen automobile with the intent to permanently deprive the owner of its use and benefit. When the defendant does not object to instructions which he now claims were inadequate, and does not tender instructions which might have cured the alleged error which he claims existed in the instructions as given, he has waived the issue and cannot allege it before this court on appeal. (*People v. Almo* (1985), 108 Ill. 2d 54, 483 N.E.2d 203; *People v. Hicks* (1987), 162 Ill. App. 3d 707, 516 N.E.2d 807.) The trial judge is under no duty to give an instruction where neither party to the case has requested it. (*People v. Peterson* (1988), 171 Ill. App. 3d 730, 525 N.E.2d 946.) The record in the case at bar shows that the defendant failed to object to the jury instructions given. In addition, the defendant failed to tender an instruction which he contends should have been given. Under these circumstances, we deem this issue waived on appeal.

■ In considering the merits of the argument, when words used in an instruction have a commonly understood meaning such as the pattern instructions given here (Illinois Pattern Jury Instructions Criminal, Nos. 23.14, 23.15 (2d ed. 1981)) it is not necessary to define them for the jury by the use of additional instructions. This is especially true when the applicable Illinois Pattern Jury Instructions do not suggest that such an additional definition is necessary. (*People v.*

*Hicks* (1987), 162 Ill. App. 3d 707, 516 N.E.2d 807.) In reviewing the facts of the instant case, when a car is stolen, it implies that the perpetrator of the crime intended to permanently deprive the owner of its use and benefit. Accordingly, it is our determination that the concept of a stolen motor vehicle is readily understood and not in need of further definition. See *People v. Johnson* (1981), 98 Ill. App. 3d 228, 424 N.E.2d 610; *People v. Browry* (1972), 8 Ill. App. 3d 599, 290 N.E.2d 650.

### III

Defendant further contends that his claim that his attorney did not subpoena several witnesses who would have testified in his favor and the trial court's failure to appoint new counsel to represent him during his post-trial motion and sentencing hearing violated his sixth amendment right to counsel. Following his conviction, defendant filed a motion for a new trial. The motion was argued and subsequently denied, and the case proceeded to sentencing. At that time the judge asked the defendant if he had anything to say. The defendant replied:

"I feel if I had have took [*sic*] the stand, you could have seen that the plaintiff's story really wasn't how it happened at all. *** I did have witnesses that were not called or subpoenaed that could have verified a lot of those things that the plaintiff said that wasn't [*sic*] really true ***."

Defendant argues on appeal that this statement was an allegation of inadequate representation by counsel and that the trial court should have appointed counsel to argue the point.

■ To successfully argue an ineffective assistance of counsel claim, the defendant must establish substantial prejudice as a result of the alleged deficiencies in defense counsel's performance at trial (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052), and not merely be a second-guessing of defense counsel's trial tactics. (*People v. Nelson* (1982), 106 Ill. App. 3d 838, 436 N.E.2d 655.) In *People v. Brandon* (1987), 157 Ill. App. 3d 835, 510 N.E.2d 1005, this court held that there was no error in rejecting the defendant's request for new counsel to argue his ineffective assistance of counsel claim where there was no allegation of any conflict between the accused and his appointed counsel until after the post-trial motion was heard and denied. The court stated that it is not necessary to appoint new counsel every time a claim of ineffective assistance of counsel is alleged, and rather, the trial court only needs to determine whether the facts underlying the claim of incompetency have potential merit and to refuse to appoint new counsel if the accused's claim is

spurious or revolves simply around a matter of trial strategy or tactics.

■ In the case at bar, the statement of defendant does not constitute a post-trial motion. When a request for a new trial is based on matters not of record, the motion must be accompanied by a sworn affidavit (*Brandon*, 157 Ill. App. 3d 835, 510 N.E.2d 1005), and that requirement was not met here. We view the statement of defendant as a protestation made at the time of sentencing. The trial record does not indicate that the defendant wished to testify but was prevented from doing so or that there were witnesses whom he wished to call but defense counsel would not call. Under these facts, the trial court was not required to treat defendant's remarks as a request for a new trial on the basis of alleged inadequacy of counsel nor as a request for appointment of counsel other than trial counsel. Further, even if defendant's unsworn allegations were true, they do not establish substantial prejudice or show how the outcome of the trial would have been different, and therefore, on this additional basis, the claim of ineffective assistance of counsel was properly rejected. See *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.

## IV

■ Finally, defendant contends that his conviction and sentence should be vacated because the recently amended statute under which he was convicted and sentenced was unconstitutional. In 1985, the Illinois legislature amended section 4—103 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 4—103(b)), reclassifying an initial conviction for possession of a stolen motor vehicle as a Class 2 felony. Since the filing of the briefs in this matter, our supreme court has resolved this issue, holding that the statute is constitutional. (*People v. Bryant* (1989), 128 Ill. 2d 448, 539 N.E.2d 1221.) The *Bryant* court held that this provision of the Illinois Vehicle Code does not violate due process even though the section provides for a greater penalty than the offense of theft, since the offense is a separate and more serious offence than that of theft and the plain language of the section exhibits a clear intent to prohibit all persons, not just organized motor vehicle thieves, from possessing stolen motor vehicles.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

MANNING, P.J., and O'CONNOR, J., concur.