THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MICHAEL McMULLIN, Defendant-Appellant.

Second District   No. 84—1009

Opinion filed December 4, 1985.

James E. Chadd and Charles Schiedel, both of State Appellate Defender's Office, of Springfield, and G. Joseph Weller, of State Appellate Defender's Office, of Elgin, for appellant.

Daniel Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Virginia M. Ashley, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE LINDBERG delivered the opinion of the court:

Defendant, Michael McMullin, was found guilty of burglary by a jury in the circuit court of Winnebago County and was sentenced to a three-year term of imprisonment. Defendant appeals contending that (1) questions by the prosecutor while cross-examining defendant and a comment during the prosecutor's closing argument regarding defendant's failure to protest his innocence to the police officer who arrested him were, even in the absence of prior *Miranda* warnings, impermissible under Illinois evidentiary law or, alternatively, under the State constitution (Ill. Const., art. I, sec. 10); (2) the trial court erred in not allowing defendant to testify about his state of mind at the time he told a police officer he "should be getting a complaint for possession of stolen property instead of burglary"; (3) the trial court erred in not allowing defense counsel to ask a prospective juror, "And do you understand that if there were two reasonable theories, one pointing toward guilt and the other towards innocence, it is your duty to vote not guilty?" and (4) defendant was denied a fair trial by a closing argument by the prosecutor which included misstatements of evidence and other improper comments.

Late the night of February 9, 1984, Ms. Charlotte Ellis, awakened by the sound of a running engine, looked out her kitchen door window and saw two men and a pickup truck in front of her garage. Ms. Ellis was sure the men saw her because they stopped and looked at her. She woke her husband, Lawrence, and they both saw the truck leaving with two ladders hanging out the back. Inspection of the garage revealed that two ladders and a snowblower were missing. The Ellises returned to the house and telephoned the police to report the burglary.

A short time later, Officer Steven Rudolph, who had received a police call about the burglary, noticed a pickup truck with its lights off travelling in the opposite direction. He made a U-turn and turned on his red lights and the truck stopped. Inside the truck's cab were defendant, who was driving, Vernon Taylor, and Roger Brien. In the back of the truck were a snowblower, which Mr. Ellis identified as the one taken from his garage, and two lawn mowers.

The thrust of the defense was that defendant's two companions had committed the burglary and that defendant had been unaware they were doing so both prior to and during the commission of the offense. (See Ill. Rev. Stat. 1983, ch. 38, pars. 5—2(c) and 19—1(a).) In support of this defense defendant testified, *inter alia*, that he stopped at Taylor's house around 10 p.m. on February 9, 1984, and drank a beer with Taylor and Brien. Defendant owned a pickup truck and had, earlier in the week, helped Taylor move. Taylor, as he had earlier in the day, asked defendant to help move some things stored at Taylor's landlord's house. Defendant said it was too late and offered to help another time, but Taylor was intoxicated and insistent, so defendant agreed to help that night.

Defendant, Taylor and Brien left Taylor's home and defendant, driving at Taylor's direction, drove them in the truck to the garage where they were seen by the Ellises. Defendant stayed in the truck and paid no attention as Taylor and Brien loaded things in the back. After about five minutes Taylor and Brien were finished and they drove away. As they were driving down the street, the truck's tailgate fell open and defendant looked back. Defendant saw they were carrying a 40-foot extension ladder which stuck far out the back of the truck. Defendant stopped and, after arguing with Taylor about it, unloaded the ladder by himself and set it against a tree. They drove a few blocks toward Taylor's residence and were then stopped by Officer Rudolph.

Defendant explained that his lights may have been out due to a faulty blinker-dimmer switch which sometimes caused his lights to malfunction. He specifically testified that he had no knowledge prior to or during the offense that anyone inside his truck planned to take anything that did not belong to them and that he did knowingly participate in the burglary.

At trial, Officer Rudolph testified that when he was served with a complaint charging him with burglary defendant said he "should be getting a complaint for possession of stolen property instead of burglary." Defendant testified that he did not recall making the statement but acknowledged that he could have. On cross-examina-

tion, the prosecutor asked defendant about this, and then proceeded:

"MR. WHITE [prosecutor]: But you did not tell the officer, 'Hey, look, you should not charge me with burglary because I don't know anything'—

MR. LIGHT [defense counsel]: (Interrupting) Objection.

THE COURT: Wait until he finishes his question, sir.

MR. WHITE: You did not tell the officer at that time that, 'Look, you shouldn't charge me with burglary because I don't know what's going on here?'

MR. LIGHT: Objection.

THE COURT: Overruled; he may answer.

A. I don't recall telling him that.

MR. WHITE: I have no further questions.

THE COURT: Mr. Light?

MR. LIGHT: May I approach the bench?

THE COURT: Sure.

(Whereupon, the following proceedings were had at the bench.)

MR. LIGHT: Is it not objectionable because the question related to his Fifth Amendment right to silence?

THE COURT: I understand what he is saying. The objection is still overruled. I understand the basis for your objection. It is still overruled, proper cross."

During his closing argument, the prosecutor made the following remarks:

"MR. WHITE: *** Now, if you were placed in the position as this defendant and had nothing to do with this, did not know what was going on, what would you tell the officer when he files a Complaint charging you with burglary? You would tell the officer, 'Hey, I shouldn't be charged with anything.'

MR. LIGHT: Judge, I am going to object. If I may approach the bench?

THE COURT: No; objection overruled."

On appeal defendant argues that, under Illinois evidentiary law and the State constitution, the prosecutor's questions while cross-examining defendant and remarks during closing argument were impermissible comments on defendant's post-arrest failure to make an exculpatory statement. Because of the view we take of this issue, we need only address defendant's contentions under Illinois evidentiary law.

■ The State argues that, because defendant objected only on

Federal constitutional grounds and because the evidentiary law based assertion of error was not in defendant's post-trial motion, this issue has been waived. While the waiver here is not as egregious as many in that defense counsel objected to each of the comments now at issue, we agree with the State that the issue raised has been waived. (See *People v. Pickett* (1973), 54 Ill. 2d 280.) However, we agree with the trial judge who said, when ruling on defendant's post-trial motion, that he thought the case was a close one. The determinative issue at trial was whether defendant had the requisite mental element to be convicted as a principal or under an accountability theory. Defendant testified he did not, and the State countered with evidence from which a jury could, if it chose, infer that he did. Since the evidence on the determinative question was closely balanced, we will review the issue raised as a matter of plain error. *People v. Pickett* (1973), 54 Ill. 2d 280, 283; 87 Ill. 2d R. 615(a).

■ The Illinois Supreme Court has held that evidence of a defendant's post-arrest silence is inadmissible because such evidence is neither material nor relevant, having no tendency to prove or disprove the charge against a defendant. (*People v. Lewerenz* (1962), 24 Ill. 2d 295, 299; *People v. Rothe* (1934), 358 Ill. 52, 57.) From the language used by the court in these cases, the language of "materiality" and "relevancy," it is apparent they are based on general evidentiary principles. (*People v. Savory* (1982), 105 Ill. App. 3d 1023, 1031, 435 N.E.2d 226, 232.) Because these decisions predate *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, and in view of their rationale, it is also apparent that the rule they set forth does not depend upon whether the silence sought to be utilized occurred before or after a defendant was given *Miranda* warnings. (*People v. Savory* (1982), 105 Ill. App. 3d 1023, 1031-32, 435 N.E.2d 226, 233; *cf. Jenkins v. Anderson* (1980), 447 U.S. 231, 239, 65 L. Ed. 2d 86, 95, 100 S. Ct. 2124, 2129 (Federal constitutional rule that a defendant's post-arrest silence is inadmissible applies only after defendant has been given *Miranda* warnings).) Because the rule of *Rothe* and *Lewerenz* is rooted in Illinois evidentiary law, it is unaltered by the Federal constitutional case law with respect to the use of *Miranda*-warning-induced silence. (*Fletcher v. Weir* (1982), 455 U.S. 603, 607, 71 L. Ed. 2d 490, 494, 102 S. Ct. 1309, 1312 (in the absence of assurances such as those in the *Miranda* warnings, "[a] State is entitled, *** to leave to the judge and jury under its own rules of evidence the resolution of the extent to which postarrest silence may be deemed to impeach a criminal defendant's own testimony").) *Rothe* and *Lewerenz* have never been

overruled by our supreme court, so we are bound to follow the rule they set forth. Therefore, unless they fall within an exception to the general rule of inadmissibility, the prosecutor's questions of defendant on cross-examination and comment during closing argument with respect to defendant's failure to make an exculpatory statement to the police after his arrest were improper and objections to them should have been sustained.

■ Since there are occasions when post-arrest silence may be relevant to the issues in a case, the rule is not without exception. We believe that, just as in the case of the Federal constitutional rule, the Illinois evidentiary rule permits the use of a defendant's post-arrest failure to tell the police his exculpatory story when the statements made by a defendant after arrest are definitely and manifestly inconsistent with his exculpatory trial testimony. (See *People v. Heidorn* (1983), 114 Ill. App. 3d 933, 939, 449 N.E.2d 568, 574.) The State argues that this exception applies to the case at bar. We disagree.

Defendant testified that he thought he was helping Vernon Taylor move some of Taylor's belongings, so he did not know the items placed in his truck were stolen. When they were in a police van together, Taylor told defendant the items were stolen. Officer Rudolph's testimony was that it was after they arrived at the Public Safety Building but before locking him in jail that defendant was served with the complaint and made the statement that he "should be getting a complaint for possession of stolen property instead of burglary." In context, this statement was entirely consistent with defendant's exculpatory trial testimony. According to defendant, he did not know a burglary was being committed by his companions but learned in the police van that the items were stolen. His knowledge that he had not been involved in the burglary, but that the stolen property had been in his truck, makes it perfectly reasonable that he would ask why he was being charged with burglary rather than possession of stolen property. Since his trial testimony was that he learned that the property was stolen after the burglary but before he made the statement, his statement was not definitely and manifestly inconsistent with his trial testimony.

As has already been noted, the evidence in this case was closely balanced. Because it was, it cannot be said that the error was harmless. Accordingly, it is necessary to reverse the circuit court's judgment and remand this case for a new trial.

■ We will address two of the other three issues because they are likely to recur when this case is retried. The first of these is

defendant's contention that he should have been permitted to testify as to his state of mind when he made a statement to a police officer. The State elicited testimony from Officer Ruldolph that, upon being served with a complaint for burglary, defendant had said he "should be getting a complaint for possession of stolen property instead of burglary." When defendant testified, he was not allowed to respond to the question, "If you had made that statement, what were you thinking at that time?" Defendant should have been permitted to respond to this question, since his explanation of his statement could have affected the weight the jury gave to the statement. (See *People v. Scott* (1963), 28 Ill. 2d 131, 132 (a defendant has the right to present to a jury evidence which affects the credibility or weight to be given a confession, including a defendant's testimony that he confessed because of promises of leniency).) We note that we would not reverse if this were the only error in this case since, although the record does show the subject of the excluded testimony (*i.e.*, defendant's state of mind when he made the statement to Officer Rudolph), there was no offer of proof to show what the substance of that testimony would have been (*i.e.*, what defendant would have said his state of mind was), and consequently it is impossible to determine from the record whether exclusion of the testimony was prejudicial. *People v. Christen* (1980), 82 Ill. App. 3d 192, 196, 402 N.E.2d 373, 376-77.

■ The other issue which may recur on retrial is defendant's contention that the trial court erroneously refused to permit a prospective juror to be asked, "And do you understand that if there were two reasonable theories, one pointing toward guilt and the other towards innocence, it is your duty to vote not guilty?" Defendant maintains that this question was simply an attempt by defense counsel to elicit from the prospective juror whether she could hold the State to its burden of proof in an entirely circumstantial case and so should have been permitted pursuant to *People v. Zehr* (1984), 103 Ill. 2d 472.

The conduct of jury *voir dire* in a criminal case is governed by Supreme Court Rule 234. (87 Ill. 2d R. 431; 94 Ill. 2d R. 234.) Rule 234 provides, *inter alia*, that "[q]uestions shall not directly or indirectly concern matters of law or instructions." (94 Ill. 2d R. 234). In criminal cases, there are exceptions to this prohibition against questions concerning matters of law or instructions. (Ill. Ann. Stat., ch. 110A, par. 234, Historical and Practice Notes, at 486 (Smith-Hurd 1985), citing *People v. Zehr* (1984), 103 Ill. 2d 472.) For example, it is reversible error for a trial court to refuse a defense request to

question prospective jurors about their knowledge "that a defendant is presumed innocent, that he is not required to offer any evidence in his own behalf, that he must be proved guilty beyond a reasonable doubt, and that his failure to testify in his own behalf cannot be held against him." (*People v. Zehr* (1984), 103 Ill. 2d 472, 477.) Questions on these subjects are necessary because each " 'goes to the heart of a particular bias or prejudice which would deprive defendant of his right to a fair and impartial jury.' " *People v. Zehr* (1984), 103 Ill. 2d 472, 477.

The question defendant wished to put to the prospective juror did not, in our opinion, go " 'to the heart of a particular bias or prejudice which would deprive defendant of his right to a fair and impartial jury.' " (*People v. Zehr* (1984), 103 Ill. 2d 472, 477.) The prospective jurors all answered questions with respect to the fundamental guarantees the *Zehr* court said they should be questioned on. These questions included ones on the presumption of innocence and the State's burden of proving guilt beyond a reasonable doubt. The question at issue went to a rule of law governing application of the burden of proof beyond a reasonable doubt to a case in which evidence of guilt is entirely circumstantial, which is not a matter of the same character as the fundamental guarantees, including the presumption of innocence and the requirement of proof of guilt beyond a reasonable doubt, *Zehr* requires prospective jurors to be questioned on. It is also noteworthy that it is very often impossible to determine at the time of jury *voir dire* whether evidence of guilt will be entirely circumstantial, so that the applicability of the legal principle stated in a question such as that at issue very often cannot be ascertained at the time the court must rule on the question's propriety.

The question at issue therefore falls within Rule 234's general prohibition against questioning on matters of law or instructions rather than the limited exception to that prohibition under *Zehr*. The trial court accordingly did not err in refusing to permit the defense to ask the question.

The judgment of the circuit court of Winnebago County is accordingly reversed and this cause is remanded for a new trial.

Reversed and remanded.

HOPF and SCHNAKE, JJ., concur.