THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,
DANNY K. NOLAN, Defendant-Appellant.

Second District   No. 2—85—0651

Opinion filed February 5, 1987.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Charles M. Schiedel and Robert Seeder, both of State Appellate Defender's Office, of Springfield, for appellant.

Robert J. Morrow, State's Attorney, of Geneva (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

Defendant, Danny K. Nolan, appeals from his conviction for murder. He was found guilty after a bench trial and sentenced to 20 years in prison. Nolan raises two issues on appeal: (1) that he was denied a fair trial because the court admitted evidence of his prearrest and post-arrest silence and allowed the prosecution to comment on that evidence during closing argument; (2) that he was not proved guilty beyond a reasonable doubt since the evidence failed to prove that he had the requisite intent to commit murder.

Danny Nolan and his wife, Sandra, arrived home around 1:30 in the morning of May 20, 1984, after an evening of heavy drinking. Danny Nolan remembered very little about getting home or going inside his house. He did recall, however, standing near the bed in his bedroom and having a .45 semi-automatic pistol in his right hand. He also remembered loading bullets into a clip for the gun. Nolan testified that Sandra was not in the bedroom at the time and that he did

not know where she was in the house. He gave the following account of what transpired.

A bullet had become jammed in the gun as he attempted to chamber it by pulling the slide back. He held the gun in his right hand and worked the slide with his left. Defendant imagined that he probably had the first finger of his right hand in the trigger guard. He then tried to push the slide forward in an attempt to unjam the bullet. As the bullet unjammed, the slide slipped out of his grasp and slid forward. The gun jerked and went off. Startled by the sound of the gunshot, Nolan looked up and saw his wife lying on the foot of the bed. He said it was the first time he was aware that she was in the bedroom. Defendant then dropped or threw the gun onto the bed and went into the living room to call police. A tape recording of the conversation between Nolan and the police operator was admitted at trial. The trial judge described the caller on the tape as exhibiting a combination of hysteria resulting in crying, sobbing, and unorthodox laughing. The judge also heard the caller say, among other things, ''I think I just shot my wife.''

Police arrived within minutes after the shot was fired. Nolan was read his *Miranda* rights and transported to the police station. He was again read the *Miranda* admonitions, one at a time, by Officer Johnson. When asked if he understood, he responded affirmatively after the first warning but gave no response to the same question after the rest of the warnings. Counsel for defendant repeatedly and unsuccessfully objected to the testimony regarding Nolan's failure to respond, calling it an attack on Nolan's right to remain silent.

Testimony of Officers Jersky and Wiggins indicated that during questioning about the shooting, while Nolan stated that the gun found at the house belonged to him, he did not answer any questions about what had happened. Defense counsel also objected to this testimony on grounds that Nolan's post-arrest silence should not be used against him. The objection was overruled. The police further testified that Nolan telephoned his brother-in-law and requested that he come to the police station because he, Nolan, had killed his wife. Finally, the police detectives indicated that a few hours later in the morning of the shooting, defendant told them what had happened. According to their testimony, Nolan claimed that at the time his wife was shot, he had been holding the gun in his right hand and pulling the slide back with his left hand when the slide slipped out of his grasp and the gun fired accidentally.

Sandra Nolan had been killed by a single bullet which had gone through her neck, severing her spinal cord. Both defendant and the

State presented crime-scene-analysis experts. While the experts agreed that the body had been moved prior to being photographed, they gave conflicting testimony as to almost everything else, but most notably as to how close the gun was when fired. Rodney Englert, the State's expert, was of the opinion it had been 12 to 24 inches from Mrs. Nolan's body when it was fired. He based his opinion on gunpowder stippling around the entry wound which he claimed was shown in the photographs. The defendant's expert, Stuart James, said such stippling cannot be determined from photographs. The pathologist who performed the autopsy on Sandra Nolan's body testified that there was no powder stippling on the body. In other testimony, Englert proposed several theories of what had happened. James either offered additional facts or opinions to undercut those theories, or labeled them as speculation.

Both defendant and the State also presented testimony from firearms experts. The State's witnesses testified that the safeties on Nolan's gun were operative and that the gun had not malfunctioned when tested. They noted that the safeties must be off and the trigger must be pulled in order for the gun to fire. The experts also testified that it is not uncommon for the slide of a gun like the one owned by Nolan to slip out of a person's hand during use and that the gun was not foolproof but could accidentally misfire. Nolan's firearms expert also testified that a malfunction such as that described by Nolan could occur and demonstrated to the court how the bullet could have jammed. He noted that pulling the slide back slowly could increase the chances of jamming.

During closing argument, the prosecutor argued to the court that if the death of Sandra Nolan had resulted from the accidental firing of his gun, Danny Nolan would have so stated when he spoke with the police operator, and again when he spoke with his brother-in-law on the telephone. Nolan's failure to assert that the shooting was accidental was characterized as a tacit admission. Immediately upon the close of the State's argument, defense counsel moved to strike those portions of the argument referred to above on the ground that the prosecution had improperly commented on defendant's right to remain silent. The motion was denied.

The court found Nolan guilty of murder and sentenced him to 20 years' imprisonment.

■ Nolan's first contention is that the admission of evidence of his silence before and after arrest, combined with prosecution comments on that silence, denied him due process and a fair trial and thus constituted reversible error. Defendant argues that his silence

was merely an exercise of his fifth amendment right to remain silent which should not have been used to penalize him at trial. As a preliminary matter, the State asserts that Nolan has waived this issue. The State maintains that this case does not present a due process violation but rather an Illinois evidentiary question. It is then correctly noted by the State that defendant's post-trial motion for a new trial raised only the Federal constitutional grounds and that defendant did not object during trial on the evidentiary-law grounds. According to the State's argument, since there is no due process violation and the evidentiary question was not raised, the entire issue is waived. First of all, we find the State's position on due process to be unfounded.

In *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, the court held that the use, for purposes of impeachment, of a defendant's silence at the time of arrest and after he has been given *Miranda* warnings violates due process. In *Doyle*, for impeachment purposes and to counter exculpatory explanations at trial, the prosecution pointedly cross-examined the defendants regarding their post-arrest silence. Defendants' convictions were reversed on grounds that their due process rights had been violated by the prosecution's focus on their silence. The court reasoned that an arrestee's silence after receiving *Miranda* warnings may be merely an exercise of the *Miranda* rights and does not necessarily give rise to an inference of guilt. Thus, according to the court, all post-arrest silence is "insolubly ambiguous" since the warnings must be given to the person arrested. While the court recognized that the *Miranda* warnings do not assure an arrestee that silence will not be penalized, it also acknowledged that such assurance is implied to one who receives the warnings. The court found that under such circumstances it would be fundamentally unfair to allow an arrestee's silence to be used to impeach his later trial explanation.

In the case now before us, the prosecution did not attack Nolan's exculpatory trial testimony through cross-examination. Rather, his explanation at trial was impeached by bringing out, through the testimony of other witnesses, the fact of his post-arrest silence and then commenting on that silence during closing argument. We think, however, that the principles of *Doyle* are as applicable to this kind of indirect attack as they were to the cross-examination of the defendants in *Doyle* itself. With the exception of his conversation with the police operator, the silence pinpointed by the prosecution occurred after Nolan was arrested and after he received *Miranda* warnings. He was entitled to believe he would not be penalized for not speaking.

Nolan points first to Officer Johnson's testimony that the defend-

ant did not respond to the *Miranda* warnings. We do not perceive admission of this testimony to be a violation of *Doyle*. The only question put to Nolan by Johnson was the routine query at the end of each warning as to whether or not he understood the meaning of the warning. Nolan was under no obligation to respond to this question. Moreover, Johnson testified that the defendant was weeping throughout the reading of the *Miranda* warnings. Since Nolan was asked nothing about the events which had taken place earlier, there was no reason to expect him to say anything about those events. Therefore, his silence about what had happened was not impeaching and evidence of this silence was not prohibited by *Doyle*.

The other testimony to which defendant objects presents a different situation. Sergeant Jersky and Detective Wiggins testified, over defense objections, that Nolan did not answer direct police questions as to what had happened at the scene of the shooting. The State attempts to dismiss this testimony on grounds that defense counsel failed to object or that the testimony was not deliberately elicited by the prosecution or that it was not improper for the officers to indicate that the defendant first spoke to the officers and then decided not to talk anymore.

The State's characterization of the challenged testimony might be acceptable if this testimony were standing alone, with nothing more. But that is not the case here. The evidence showed that Nolan telephoned police immediately after the shooting and stated to the police operator that he had just shot his wife. Both Jersky and Wiggins testified that Nolan later telephoned his brother-in-law from the police station and informed him that "I just killed Sue." Subsequently, during closing argument, the prosecutor very deliberately pointed out that Nolan had not proclaimed to either the police operator or his brother-in-law that the gun had gone off by accident. According to the prosecutor:

> "If this was an accident, if that gun slipped and fired, the defendant would have said so either at the first time or at the very least the second time. He would have screamed it, Your Honor. He would have made a point of letting everybody know she was accidentally shot. My gun went off and shot her. I didn't mean to shoot her. But we don't have any of that, Judge. What we have is the failure to state that.
>
> That is the most important thing that could have happened. The most important thing that Mr. Nolan would have remembered out of that sequence. That is the most important fact between a murder and something you did not mean to do. You

would die to let that out, Judge. You would scream to let that out, Judge. But we don't and Mr. Nolan didn't."

The State thus asserted in no uncertain terms that Nolan's failure to declare at the two earlier times that the shooting was accidental was an indication that his later explanation was fabricated.

The State's focus in closing argument on defendant's failure to blurt out an explanation of the events that led to the death of his wife placed the challenged trial testimony, which might otherwise have been permissible, in a different context. This is not a case like *People v. Martinez* (1980), 86 Ill. App. 3d 486, 408 N.E.2d 358, on which the State relies. The court there found that admission of testimony describing defendant's termination of his interview with the police officer was not an improper comment on defendant's right to remain silent and did not constitute plain error. In *Martinez*, however, although defendant had been given *Miranda* warnings, it was his prearrest, rather than post-arrest, silence that was at issue. The court noted that the defendant had spoken with police and that the officers' testimony reasonably stated that defendant had decided to end the conversation. However, the court also recognized that this termination was not referred to again during trial and that the prosecution did not suggest in closing argument that defendant's silence indicated guilt. The court concluded that, absent exploitation by the State, evidence that defendant decided to stop talking to police was not improper comment on his silence.

■ In the case at bar, we find that evidence of Nolan's silence was elicited by the prosecution and intentionally exploited in closing argument. It is not significant that the closing argument did not refer to each and every piece of evidence that showed defendant's silence. Nor is it significant that defense counsel did not object to every such bit of evidence since counsel did object, often and at length, to the prosecution's attempts to focus on defendant's silence. The challenged evidence, taken as a whole and in light of the State's closing argument, abused defendant's right to remain silent. Its admission for impeachment purposes was error. *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240.

■ The State argues on appeal, as it did at trial, that Nolan's silence as to the cause of the shooting, both to the police operator and to his brother-in-law, constituted a tacit admission of guilt and was therefore admissible. On appeal, the State offers no authority for this position. Even had support been offered, however, we do not believe the State's position could be maintained. Initially, we find nothing in *Doyle* to indicate that an alleged admission by silence constitutes an

exception to the rule that an arrestee may not be impeached as a result of exercising his right to remain silent. Indeed, as stated, post-arrest silence is "insolubly ambiguous" and may not be used as a weapon against a defendant, even in the guise of an asserted admission. Accordingly, whether or not Nolan's silence when he spoke to his brother-in-law was a tacit admission is irrelevant. It should not have been used against him.

■ Neither can we discern that Nolan's prearrest statement to the police operator was a tacit admission of guilt. First of all, we note in passing that the Illinois cases allowing the use of silence in the face of accusations as implied admissions have been discredited by *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. (*People v. Rehbein* (1978), 74 Ill. 2d 435, 441, 386 N.E.2d 39, *cert. denied* (1979), 442 U.S. 919, 61 L. Ed. 2d 287, 99 S. Ct. 2843.) But even where the tacit-admission rule does apply, the alleged admission must have been made in the face of an accusation of guilt. (*People v. Aughinbaugh* (1967), 36 Ill. 2d 320, 223 N.E.2d 117; *People v. Deberry* (1977), 46 Ill. App. 3d 719, 721, 361 N.E.2d 632.) As stated in *People v. Bennett* (1954), 3 Ill. 2d 357, 361, 121 N.E.2d 595: "[A]n admission may be implied from the conduct of a party charged with a crime who remains silent *when one states in his hearing that he was concerned in the commission of a crime,* when the statement is made under circumstances which allow an opportunity to him to reply and where a man similarly situated would ordinarily deny the imputation." (Emphasis added.) In the case before us, Nolan had not been charged with any offense at the time he spoke to the police operator. Nor was an accusation of guilt made within his hearing to which he, or any man similarly situated, would ordinarily have replied. The tacit-admission rule is not applicable here.

■ Defendant asserts that admission of evidence and comments on his silence were also error under Illinois evidentiary law. Since defendant neither objected on the basis of evidentiary law, nor raised this particular question in his post-trial motion, this issue could be deemed waived. However, the plain-error doctrine has been applied to the admission of evidence of a defendant's silence (*People v. McMullin* (1985), 138 Ill. App. 3d 872, 486 N.E.2d 412; *People v. Deberry* (1977), 46 Ill. App. 3d 719, 361 N.E.2d 632; *People v. Monaghan* (1976), 40 Ill. App. 3d 322, 352 N.E.2d 295), and we will review the matter under these principles.

■ It has often been held by Illinois courts that evidence of a defendant's post-arrest silence is inadmissible because it is neither material nor relevant and has no tendency to prove or disprove the

charge against a defendant. (*People v. Lewerenz* (1962), 24 Ill. 2d 295, 299, 181 N.E.2d 99; *People v. Rothe* (1934), 358 Ill. 52, 57, 192 N.E. 777; *People v. Wright* (1975), 32 Ill. App. 3d 736, 336 N.E.2d 18.) The State has presented to us no exceptions to this rule, and we have found none, which might render the complained-of evidence and comments admissible. As we have already noted, we do not believe the tacit-admission rule is applicable because neither alleged admission was made in response to an accusation of guilt.

■■ While a defendant's post-arrest failure to offer an exculpatory explanation may be utilized when statements made by a defendant after arrest are manifestly inconsistent with his exculpatory trial story (*People v. McMullin* (1985), 138 Ill. App. 3d 872, 486 N.E.2d 412), that exception is not applicable here. Nolan told the police officers that he owned the gun which killed his wife. He also told his brother-in-law that he had killed his wife. Nolan never changed this part of his story; he never denied that he owned the gun or that he was holding the gun when it fired the shot that killed Sandra Nolan. He never made any pretrial statements that were manifestly inconsistent with his trial story of an accidental misfire. Accordingly, evidence of his silence was not admissible under the exception set forth in *McMullin*. In the absence of an applicable exception, Illinois evidentiary law prohibited admission of the trial testimony and the prosecutor's comments which implied that Nolan's silence gave rise to an inference of guilt.

■■ The State argues that even if the challenged evidence was erroneously admitted, it amounted only to harmless error. We disagree. The prejudice to Nolan could not have been harmless. The determinative question was that of Nolan's intent at the time of the shooting. The State's evidence of his intent was far from overwhelming. Nolan was the sole occurrence witness, and his testimony indicated that he did not have the intent necessary for a murder conviction. Thus, Nolan's credibility was absolutely crucial. Use of his silence against him was unfair and highly prejudicial.

Since this cause must be remanded for a new trial, we find it unnecessary to consider the remaining issue raised by the defendant. We note, however, that we believe the evidence presented at trial was sufficient to conclude that the defendant was guilty beyond a reasonable doubt. We do not mean we are making a finding as to the defendant's guilt or innocence which would be binding on retrial, but rather our consideration of the sufficiency of the evidence admitted at trial will remove the risk of subjecting the defendant to double jeopardy. See *People v. Taylor* (1979), 76 Ill. 2d 289, 309, 391 N.E.2d 366; *Peo-*

*ple v. Littlejohn* (1986), 144 Ill. App. 3d 813, 828, 494 N.E.2d 677.

The judgment of the circuit court of Kane County is reversed, and this cause is remanded for a new trial.

Reversed and remanded.

LINDBERG, P.J., and UNVERZAGT, J., concur.