(July 31, 1997)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DUANE M. GABRIEL, Appellant. [661 NYS2d 306] —Carpinello, J. Appeal from a judgment of the County Court of Rensselaer County (McGrath, J.), rendered June 18, 1996, upon a verdict convicting defendant of the crimes of murder in the second degree (two counts), grand larceny in the fourth degree (two counts) and petit larceny (three counts).

This case arises out of the September 19, 1994 shooting deaths of Robert Hathaway and his son, Michael Hathaway, in their Town of Poestenkill, Rensselaer County, home by defendant, then 16 years old. On the day of the murders, defendant, who had been living with the Hathaway family since July 1994, skipped school and was alone in the house when Robert Hathaway arrived home. According to defendant, Robert Hathaway appeared drunk (although autopsy results contradict this assessment) and allegedly began harassing him about "[messing] up the family". Defendant angrily retrieved a .22-caliber rifle from the basement and shot him in the back, causing nonfatal

injuries. After the rifle malfunctioned on the second shot, defendant, wanting to kill Robert Hathaway "so he couldn't call the police", retrieved and loaded a 12-gauge shotgun and proceeded to kill him by shooting him several times.

At this point, Michael Hathaway returned home. Defendant decided to kill him as well so that he too would be unable to call the police. After luring Michael Hathaway into the basement, defendant fatally shot him with the shotgun and removed $24 and car keys from his pockets. After packing some clothes, stealing jewelry from the house and loading up the Hathaway vehicle, defendant absconded. He disposed of one gun under a friend's porch and then traveled to a neighboring county where he pushed the vehicle over a cliff and distributed the stolen jewelry to friends. Defendant does not deny committing these murders, but claims that he did so under the influence of extreme emotional disturbance. Specifically, defendant contends that when he committed these murders he was suffering from posttraumatic stress disorder resulting from childhood sexual abuse.

Following a trial at which defendant raised the affirmative defense of extreme emotional disturbance (see, Penal Law § 125.25 [1] [a]), defendant was convicted of two counts of murder in the second degree, two counts of grand larceny in the fourth degree and three counts of petit larceny. He was sentenced to consecutive prison terms of 25 years to life for each murder conviction and 1⅓ to 4 years for each grand larceny conviction. He was also sentenced to concurrent one-year jail terms for each petit larceny conviction. Defendant appeals.

We reject defendant's contention that the jury's verdict convicting him of two counts of murder in the second degree was against the weight of the evidence. The applicability of an extreme emotional disturbance defense is generally a matter left to the discretion of the jury (see, People v Casassa, 49 NY2d 668, 679-681, cert denied 449 US 842). Upon the exercise of our factual review power, we are satisfied that the jury's verdict is not against the weight of the evidence (see, People v Hartsock, 189 AD2d 991, 992; People v Wagner, 178 AD2d 679).

With respect to his defense, defendant presented the testimony of two experts. Richard Hamill, a clinical psychologist who had previously conducted an evaluation of defendant in July 1988 as a result of allegations that his father sexually abused him, testified that defendant was subject to "savage abuse" at the hands of his father and that, in 1988, he was "showing symptoms consistent with post-traumatic stress dis-

order". Hamill admitted, however, that he had no information on which to base an opinion that defendant suffered from posttraumatic stress disorder after 1988.

The jury also heard from James Thalmann, a psychologist who performed evaluations of defendant in April 1995 and May 1995. Thalmann opined that defendant has been suffering from posttraumatic stress disorder ever since he was sexually abused as a child by his father and that this posttraumatic stress disorder manifested itself on September 19, 1994 when defendant lost control of his behavior after allegedly being taunted by Robert Hathaway and had a "rage reaction". In Thalmann's opinion, defendant suffered from an extreme emotional disturbance on September 19, 1994 and his conduct during both murders was consistent with such disturbance.

In rebuttal, the People produced Thomas Qualtere, a psychiatrist who evaluated defendant on November 29, 1995. According to Qualtere, defendant did not suffer from any formal mental disease or defect on September 19, 1994; rather, defendant suffered from a mere "conduct disorder" at this time. Qualtere opined that defendant was not suffering from an extreme emotional disturbance when he committed these murders inasmuch as defendant was able to recall everything he did on that day (which included stealing property from the house, making two trips to load the Hathaway vehicle with personal and stolen property and giving away the pilfered items to friends) and consider the consequences of his actions— factors which, according to Qualtere, are inconsistent with extreme emotional disturbance. The jury was entitled to credit Qualtere's testimony and to reject that of Thalmann (*see, People v Grinan,* 161 AD2d 325, *lv denied* 76 NY2d 857), and we find that the record before us supports its determination (*see, People v Bleakley,* 69 NY2d 490, 495; *cf., People v Liebman,* 179 AD2d 245, *appeal dismissed* 81 NY2d 834).

Nor do we find reversible error in County Court's decision to disallow rebuttal evidence by defendant (*see,* CPL 260.30 [7]). As the proponent of the affirmative defense, defendant had the burden of presenting evidence before the close of his proof (*see, People v Harris,* 57 NY2d 335, 345, *cert denied* 460 US 1047) demonstrating that he was under the influence of an extreme emotional disturbance when he fatally shot Robert Hathaway and Michael Hathaway (*see,* Penal Law § 125.25 [1] [a]; *People v Patterson,* 39 NY2d 288, 301-304, *affd* 432 US 197). In order to introduce rebuttal evidence, defendant was required to disprove an affirmative *fact* which the People endeavored to prove (*see, People v Harris, supra*).

The rebuttal evidence sought to be introduced consisted of additional testimony from Thalmann to "clear[ ] up" incorrect statements and vague and inappropriate responses made by Qualtere. We note first that defense counsel had ample opportunity to cross-examine Qualtere on any alleged inaccurate statements and/or vague responses. Moreover, and more importantly, the proffered rebuttal evidence was not demonstrated to be evidence in denial of some affirmative *fact* which the People endeavored to prove (*cf., People v Lopez,* 187 AD2d 533, *lv denied* 81 NY2d 843; *People v Ortiz,* 133 AD2d 853, *lv denied* 70 NY2d 959; *People v Lebrun,* 126 AD2d 913, *lv denied* 69 NY2d 882).

Significantly, County Court gave defense counsel ample opportunity to articulate an offer of proof establishing that the rebuttal evidence was to *contradict* some affirmative fact, rather than to simply restate Thalmann's opinions or impeach Qualtere's credibility—matters which are clearly collateral and not appropriate for rebuttal. This defense counsel failed to do. Thus, while we recognize that "[f]ew rights are more fundamental than that of an accused to present witnesses in his [or her] own defense" (*Chambers v Mississippi,* 410 US 284, 302), we are unpersuaded that defendant's due process rights were violated by the denial of his request to introduce rebuttal evidence or that such denial was an abuse of County Court's discretion (*cf., People v Harris, supra*).

Defendant further claims that County Court's jury charge on extreme emotional disturbance was inaccurate and incomplete in that it failed to sufficiently instruct the jury on "reasonable explanation or excuse" and their consideration of mercy. Defendant also contends that the charge was inconsistent and vague. We note first that the charge as given was virtually identical to the charge requested by defense counsel. We next note that defense counsel never took an exception to the charge once given or at any time thereafter when read back to the jury. Accordingly, this issue has not been properly preserved for appellate review (*see,* CPL 470.05 [2]; *People v Thomas,* 50 NY2d 467, 471-473). Furthermore, reversal in the interest of justice is not warranted (*see,* CPL 470.15 [6]) inasmuch as the charge, when read as a whole, conveyed the appropriate standard of review to the jury and was not misleading (*see, People v Maher,* 89 NY2d 456; *see generally, People v June,* 183 AD2d 960, *lv denied* 80 NY2d 905).

Defendant next claims that he was deprived of his constitutional right to counsel because one of his two trial attorneys was a former acquaintance of Robert Hathaway's brother. This

attorney, who did not make the connection when he first accepted defendant's case, immediately disclosed this relationship to County Court, the People and defendant after receiving a phone call from the brother prior to the trial. Because this scenario involves neither defense counsel's joint representation of codefendants (*see, e.g., People v Gomberg*, 38 NY2d 307) nor defense counsel's former *legal* representation of a witness (*see, e.g., People v Lombardo*, 61 NY2d 97), we are of the view that a *Gomberg* inquiry was not required. In any event, County Court conducted an inquiry of defendant about this potential conflict. At a conference conducted four months before trial, defendant unequivocally advised the court that, despite co-counsel's prior relationship with the victims' family member, he wanted counsel to continue representing him. Moreover, in light of the aggressive representation of defendant by both attorneys, any alleged conflict does not warrant reversal of the convictions in this case (*see, People v Lombardo, supra*, at 102-103; *People v Medina*, 208 AD2d 974, 975, *lv denied* 84 NY2d 1035).

Defendant makes additional claims that he was denied effective assistance of counsel. Mindful of the standard of review articulated in *People v Baldi* (54 NY2d 137, 147), our review of the record reveals that defendant was represented by two well-prepared and experienced criminal attorneys. They vigorously mounted a collaborative, albeit unsuccessful, defense and we are eminently satisfied that they provided meaningful representation (*see, People v Satterfield*, 66 NY2d 796). As to defendant's contention that his sentence was harsh and excessive, we find no extraordinary circumstances warranting disturbance of it.

Defendant's remaining contentions have been reviewed and found to be without merit.

Cardona, P. J., Mercure, White and Casey, JJ., concur. Ordered that the judgment is affirmed.