■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KIPP J. PATTERELLI, Appellant. [889 NYS2d 748]—

Lahtinen, J.

Defendant allegedly arrived at the victim's apartment in the early morning hours seeking drugs. The two were acquainted since defendant was the brother of the victim's ex-boyfriend. The victim, an admitted cocaine user, told defendant that she might be able to get drugs at the place she worked as an exotic dancer. Their efforts to procure drugs were unsuccessful and, upon returning to the victim's apartment, defendant entered uninvited.

Over the course of the next several hours, defendant, among other things, allegedly fondled the victim, forced her to perform oral sex upon him and forcibly engaged in sexual intercourse with her. According to the victim, when she initially attempted to stop his conduct or cry out so that a neighbor would hear, defendant choked her and threatened to kill her. She reported the incident to police later the same day and defendant was eventually charged in a seven-count indictment with three counts of criminal sexual act in the first degree, rape in the first degree, two counts of sexual abuse in the first degree and unlawful imprisonment in the second degree. His defense focused on the contention that the sex was entirely consensual. The jury found him guilty on all seven counts and he was sentenced to an aggregate prison term of 49 years plus five years of postrelease supervision. Defendant appeals.

Defendant initially argues that the verdict was against the weight of the evidence. A conclusion different than the one reached by the jury would not have been unreasonable based on the evidence at trial and, thus, we must, "like the trier of fact below, 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*People v Bleakley*, 69 NY2d 490,

495 [1987], quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62 [1943]; *see People v Romero*, 7 NY3d 633, 643 [2006]). The victim gave detailed testimony establishing the elements of the crime, including that she did not consent. Defendant points to, among other things, the victim's mental health history and inconsistencies in some details of her story as grounds for rejecting key parts of her testimony. These factors, however, created credibility issues for the jury under the circumstances of this case (*see People v Blair*, 32 AD3d 613, 614 [2006]; *People v Tirado*, 19 AD3d 712, 713-714 [2005], *lv denied* 5 NY3d 810 [2005]; *People v Nickel*, 14 AD3d 869, 871 [2005], *lv denied* 4 NY3d 834 [2005]). Upon reviewing the record and weighing the evidence, we are unpersuaded that the verdict was against the weight of the evidence.

There is, however, merit to defendant's contention that the People improperly elicited testimony during their case-in-chief regarding defendant's invocation of his right to remain silent. "[T]he People may not use a defendant's silence against him or her on their direct case" (*People v Stewart*, 20 AD3d 769, 770 [2005]; *see People v Conyers*, 49 NY2d 174, 177 [1980], *vacated on other grounds* 449 US 809 [1980], *adhered to on remand* 52 NY2d 454 [1981]). "This rule applies equally to situations in which a defendant responds to questioning but declines to answer certain questions or desires to halt questioning" (*People v Hunt*, 18 AD3d 891, 892 [2005] [citation omitted]; *see People v Sprague*, 267 AD2d 875, 879-880 [1999], *lv denied* 94 NY2d 925 [2000]).

At a pretrial hearing, police officer Jason A. Newcomb testified about a prearrest, Mirandized interrogation of defendant. Newcomb's report of the relevant dialogue included:

"Q: She's claiming you came to her apartment this morning and something happened?

"A: Nothing happened, what did she say? I thought it was about leaving the county or trying to get drugs.

"Q: She claims you made her do some things, if she and you both consented I don't see a problem.

"A: I knew I made a mistake having contact with her, you don't understand I'm a registered offender and was in jail for seven years then went back for a year, *I don't want to discuss anything with or about her until I speak to an attorney, I can't*" (emphasis added).

During later conferences, defendant's first attorney and the prosecutor agreed that the last part of defendant's statement

(i.e., "until I speak to an attorney, I can't") should be redacted to avoid improperly injecting into the trial his invocation of his right to counsel. Prior to opening statements at trial, defendant's second attorney requested that additional language from defendant's statement to Newcomb (i.e., "I don't want to discuss anything with or about [the victim]") not be permitted since it potentially implicated his right to remain silent. Over defendant's objection, the request was denied.

Thereafter, during the People's case, the prosecutor's questions on direct examination resulted in Newcomb referring three times to defendant's statement about not wanting to continue talking to him, including this response: "And I told him that [the victim] was making some allegations that something had happened at her place. And he at that point said that he knew he had made a mistake having contact with her and initially thought that this was over drugs. And then he indicated that he wished not to speak with me any further about the matter."

Later, on redirect examination, Newcomb testified:

"Q: What did [defendant] say to you with regard to [the victim] and the contact with her?

"A: He said that he did see her that morning . . . He also indicated that he had made a mistake by having contact with her . . . and that he did not want to say anything more about her."

Finally, during the People's summation, the prosecutor argued to the jury as follows: "[The victim's] testimony is corroborated by the statement that [defendant] made to [Newcomb]. I mean, after all, I mean, he says all kinds of things. Yeah, I saw her this morning, but she was going with a guy named Brian to Syracuse to get drugs. And then when [defendant] was thinking about it with [Newcomb], he said, you know what? I made a mistake of being around that girl, *and I don't want to talk to you about it anymore. Again what does the evidence and your common sense tell you?*" (Emphasis added.)

It is apparent from these portions of the record that the People attempted to use defendant's invocation of his right to remain silent as a basis for the jury to draw an inference of guilt. This was error (*see e.g. People v Goldston*, 6 AD3d 736, 737-738 [2004]). Any effort to characterize Newcomb's testimony as merely an innocuous comment describing the termination of questioning is unavailing in light of the prosecutor's efforts to exploit defendant's silence in summation (*see People v*

*Nolan*, 152 Ill App 3d 260, 266-267, 504 NE2d 205, 209-210 [1987]).*

The error cannot be characterized as harmless. No curative instruction was given to the jury and the evidence of defendant's guilt was not overwhelming. "[W]e are unable to conclude that there is no reasonable possibility that the evidence regarding defendant's invocation of his rights contributed to his conviction" (*People v Murphy*, 51 AD3d 1057, 1058 [2008], *lv denied* 11 NY3d 792 [2008]; *see People v Knowles*, 42 AD3d 662, 665 [2007]; *People v Stewart*, 20 AD3d at 770-771). The judgment must thus be reversed and a new trial held. The remaining argument is academic.

Mercure, J.P., Rose, Malone Jr. and Garry, JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Cortland County for a new trial.

---

* Indeed, even on appeal, the People continue to urge in their brief that an inference should be drawn from defendant's silence, arguing: "[W]hen the questioning turned to what happened at [the victim's] residence, [defendant's] pretrial silence is inconsistent with [his] trial defense that he had consensual sex with [the victim]."