Garry, J.
(dissenting). I respectfully dissent. As the majority concedes, an error of constitutional dimension occurred during *1337 this trial, when evidence of defendant’s pretrial exercise of his right to remain silent was improperly used against him. The restriction against use of a defendant’s silence is premised upon the fundamental unfairness that arises when the state implicitly assures an arrested person that silence will not be used against him or her and then reneges upon that promise (see Doyle v Ohio, 426 US 610, 618-619 [1976]; People v Savage, 50 NY2d 673, 677-678 [1980], cert denied 449 US 1016 [1980]). Whether a defendant’s silence is used as part of the People’s direct case, for impeachment purposes, or—as here—to challenge a defense, “[t]he implicit promise, the breach, and the consequent penalty are identical” and the unfairness is not altered (Wainwright v Greenfield, 474 US 284, 292 [1986]; see People v Conyers, 52 NY2d 454, 459 [1981]; People v Stewart, 20 AD3d 769, 770-771 [2005]; People v Goldston, 6 AD3d 736, 737-738 [2004]). As this was a constitutional violation, the test applied upon review is stringent: the error may be deemed harmless only if the evidence is so overwhelming that there is no reasonable possibility that the error affected the verdict (see People v Patterelli, 68 AD3d 1151, 1155 [2009]; People v Murphy, 51 AD3d 1057, 1058 [2008], lv denied 11 NY3d 792 [2008]; People v Stewart, 20 AD3d at 770-771). I cannot agree with the majority that this strict standard was satisfied.
The issue posed is not whether defendant shot and killed the two victims—that evidence is most clearly overwhelming. The sole issue before this Court involves the quantum of evidence disproving defendant’s claim of extreme emotional disturbance—a defense that, notably, he was required to establish only by a preponderance of the evidence (see Penal Law § 25.00 [2]; People v Patterson, 39 NY2d 288, 301 [1976]). In this respect, defendant presented the expert testimony of a forensic psychiatrist who testified that, following a 2006 incident in which defendant was assaulted and injured while working as a prison guard, he suffered from post-traumatic stress disorder and major depressive disorder. This expert testified that defendant’s career, financial security, and family and social networks broke down in the years following his injury; he was unable to return to work, required ongoing psychiatric treatment, suffered from fearfulness, paranoia and recurrent major depressive episodes, and his turbulent, on-again, off-again relationship with Patricia Howard became his “life line.” In the weeks just before the shooting, that relationship, too, broke down, resulting in what the forensic psychiatrist described as accelerating distress and depression, as defendant’s anxiety and forgetfulness worsened and his judgment and cognition deteriorated. Defendant’s expert opined that the “frenetic” telephone calls to *1338 Howard and Timothy Carter just before the shootings reflected increasing desperation and “anguish.” According to the expert, by the time defendant confronted Howard at Carter’s residence, he was psychologically and physically debilitated such that he felt that his life would end if he lost Howard; when she allegedly made a taunting remark about her relationship with Carter, defendant was overwhelmed and lost control. Given these forces, in the expert’s professional opinion, defendant was suffering from extreme emotional disturbance when he shot the victims.
It was the jury’s prerogative to reject this psychiatric opinion and to credit, instead, the contrary views of the People’s expert. Were this case to be returned for trial, a jury might well reach the same conclusions set forth in the majority decision, finding that defendant’s behavior arose from rational calculation rather than increasing desperation and loss of control. Nonetheless, however well founded such a conclusion may appear to be, the process of evaluating, interpreting and assigning weight to conflicting evidence is properly reserved to the jury; in light of the stringent standards governing our review, and upon this record, I do not find that the evidence before us permits a judicial determination. Our task on this appeal is not to engage in weighing the evidence, but is limited instead to determining whether the evidence controverting the extreme emotional disturbance defense is so overwhelming that there is no reasonable possibility that the constitutional error affected the jury’s rejection of that defense (see People v Patterelli, 68 AD3d at 1154-1155). Here, for this Court to reach this conclusion as a matter of law—in effect, rejecting the opinion of defendant’s expert as unworthy of belief—usurps the jury’s prerogative to determine whether, in its discretion, the defense of extreme emotional disturbance is applicable (see People v Gabriel, 241 AD2d 835, 836 [1997], lv denied 91 NY2d 892 [1998]). Considering all of the evidence and, in particular, the conflicting expert opinions, I cannot conclude that the error of permitting the People to use defendant’s postarrest silence to suggest that he had falsified his affirmative defense was harmless beyond a reasonable doubt (see People v Murphy, 51 AD3d at 1058; People v Stewart, 20 AD3d at 770-771; People v Gabriel, 241 AD2d at 836; see also People v Theodore, 113 AD3d 703, 704 [2014]; People v McArthur, 101 AD3d 752, 752-753 [2012], lv denied 20 NY3d 1101 [2013]). Accordingly, I would reverse defendant’s murder convictions in the interest of justice and remit the matter for a new trial on those charges.
Ordered that the judgment is affirmed.