*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  July 17, 2014                    104420
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                    Respondent,

        v                                    MEMORANDUM AND ORDER

AYERIUS W. BENSON,
                    Appellant.
_____


Calendar Date:   June 2, 2014

Before:  Stein, J.P., McCarthy, Garry, Lynch and Devine, JJ.

_____


        Eugene P. Grimmick, Troy, for appellant.

        Arthur F. Glass Jr., Acting District Attorney, Troy (Jarrod
Sanford of counsel), for respondent.

_____


Garry, J.

        Appeals (1) from a judgment of the County Court of
Rensselaer County (Ceresia, J.), rendered May 20, 2011, upon a
verdict convicting defendant of the crimes of murder in the
second degree and criminal possession of a weapon in the second
degree, and (2) from an order of said court, entered May 25,
2011, which amended the judgment of conviction to specify the
amount of restitution owed by defendant.

        In April 2010, the victim assaulted defendant without
provocation in the City of Troy, Rensselaer County.  After the
victim left, defendant told witnesses he was going to get a gun
and kill the victim.  He then ran to his nearby apartment,
retrieved a gun, and went to the victim's apartment, where he
told the victim's fiancée and her mother that he intended to kill

the victim.  When the victim arrived shortly thereafter, defendant shot him numerous times and killed him.

Defendant fled to New York City after the shooting, but returned the next day.  When approached by police officers, he provided a false name and tried to flee.  He was arrested and charged with one count of murder in the second degree and two counts of criminal possession of a weapon in the second degree. At trial, defendant admitted to killing the victim, but maintained that he was suffering from an extreme emotional disturbance.[1]  The jury rejected this defense and found him guilty of murder in the second degree and criminal possession of a weapon in the second degree.[2]  Defendant was sentenced to an aggregate prison term of 25 years to life and was ordered to pay restitution.  He appeals from the judgment of conviction and from a subsequent order amending the judgment to specify the restitution amount.[3]

Defendant contends that the jury's rejection of his affirmative defense of extreme emotional disturbance renders the guilty verdict as to murder in the second degree against the weight of the evidence.  Where, as here, a different verdict would not have been unreasonable, we must, like the trier of fact below, "weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions" (People v Danielson, 9 NY3d 342, 348 [2007]; see People v Bleakley, 69 NY2d 490, 495 [1987];

---

[1]  Defendant also maintained that his actions were justified (see Penal Law § 35.15); the jury's rejection of this defense is not challenged upon appeal.

[2]  County Court, in its discretion, submitted only one of the two counts of criminal possession of a weapon in the second degree to the jury (see CPL 300.40 [3] [a]).

[3]  As defendant makes no arguments related to restitution on this appeal, we deem that aspect of the appeal abandoned (see People v Chase, 299 AD2d 597, 598 n [2002], lv denied 99 NY2d 613 [2003]).

People v Hendrie, 24 AD3d 871, 875 [2005], lv denied 6 NY3d 776 [2006]). The affirmative defense of extreme emotional disturbance – which a defendant must establish by a preponderance of the evidence (see Penal Law §§ 25.00 [2]; 125.25 [1] [a]) – permits "a defendant charged with murder in the second degree to demonstrate the existence of mitigating factors which indicate that, although he [or she] is not free from responsibility for his [or her] crime, he [or she] ought to be punished less severely by reducing the crime to manslaughter in the first degree" (People v Hoke, 276 AD2d 903, 903 [2000], lv denied 96 NY2d 801 [2001]; see People v Gonzalez, 22 NY3d 539, 544-545 [2014]; People v Casassa, 49 NY2d 668, 675 [1980], cert denied 449 US 842 [1980]). As charged to the jury, defendant was required to establish that, at the time he committed the homicide, he acted under the influence of an extreme emotional disturbance for which there was a reasonable explanation or excuse (see Penal Law § 125.25 [1]; People v Roche, 98 NY2d 70, 75-76 [2002]; People v Harris, 95 NY2d 316, 319 [2000]; People v Hartsock, 189 AD2d 991, 992 [1993]).

Defendant testified at trial that, at one point, he and the victim had been close friends; however, their relationship changed when the victim – a much larger man, weighing over 300 pounds more than defendant – allegedly began, among other things, physically abusing him. According to defendant, he "snapped" on the day of the shooting after the victim choked him, pushed him part way through a storm door and threatened that "he was going to kill [defendant]." Defendant stated that he felt "scared and hurt, excited" and that his purpose in going to the victim's apartment with a gun was to "protect [him]self." Defendant acknowledged that he called a friend on the way and stated that he was going to kill the victim, but denied that he intended to follow through on this threat. After reaching the victim's apartment and arguing with the victim's fiancée and her mother, defendant began to walk away, at which point the victim arrived. Defendant testified that he saw the victim walk towards him and "flip[] out a knife." In response, defendant raised his gun, but the victim continued to approach. Defendant fired one shot and, realizing that the shot did not hinder the victim's movements, fired several more shots at the victim "until the gun was empty."

Defendant's expert, James Thallman, testified that he evaluated defendant and diagnosed him with an "adjustment disorder with disturbance of emotions and conduct," characterized by a heightened response to an identifiable stressor. Noting that defendant's educational records described him as "mentally retarded," Thallman further opined that defendant suffered from a learning disorder characterized by limited cognitive functioning and "neurological brain dysfunction" that limited his ability to withstand stress. Thallman opined that these attributes dictated defendant's actions and rendered him unable to control his impulses after being faced with an "extreme stressor" in the form of the victim's physical assault. In Thallman's professional opinion, when defendant killed the victim, he was suffering from an extreme emotional disturbance that rendered his behavior irrational and "emotionally reactive" and prevented him from "accurately view[ing] the situation." Thallman acknowledged that defendant had been less than truthful during the evaluation, had initially misrepresented some details, and might have fabricated the claim that the victim had a knife.

In rebuttal, the People proffered the expert testimony of Lawrence Siegel, who disagreed with Thallman's diagnosis and, instead, opined that defendant suffered from antisocial personality disorder. According to Siegel, this disorder is characterized by, among other factors, "impulsivity" and a tendency to act aggressively, and is inconsistent with the concept of extreme emotional disturbance. Siegel opined that defendant's actions, viewed in their totality, were in line with his prior documented behavior and were "more consistent" with anger and a wish for revenge than with the claimed defense. Siegel stated that, although defendant's statement after being choked that he was "going to get [his] gun" was spontaneous, there were many intervening events between that statement and the shooting. He also disagreed that defendant had "snapped," stating that defendant "acted in a manner that he wanted to act" and that his actions in evading arrest tended to disprove the theory that he had snapped.

Faced with this competing expert testimony as to whether defendant was acting under an extreme emotional disturbance at

the time he killed the victim, it was well within the jury's province to credit the testimony offered by the People's expert and reject the opinion of defendant's expert (see People v Hendrie, 24 AD3d at 874-875; People v Costa, 256 AD2d 809 [1998], lv denied 93 NY2d 872 [1999]; People v Gabriel, 241 AD2d 835, 836 [1997], lv denied 91 NY2d 892 [1998]).  Upon our independent review of the evidence (see People v Danielson, 9 NY3d at 348-349), we find no reason to disturb the jury's determination in this regard (see People v Steen, 107 AD3d 1608, 1608 [2013], lv denied 22 NY3d 959 [2013]; People v Hoke, 276 AD2d at 904; People v Hartsock, 189 AD2d at 992-993).

Nor are we persuaded that County Court abused its discretion in imposing the maximum allowable sentence (see Penal Law §§ 70.00 [2] [a]; [3] [a] [i]; 70.02 [3] [b]).  Despite defendant's cognitive limitations, his tumultuous upbringing and the fact that he was 18 years old at the time he committed the crime — factors that County Court expressly acknowledged at sentencing — the record establishes that he shot the victim repeatedly at close range in a residential apartment complex in front of, among others, the victim's fiancée and young stepchild. We find no extraordinary circumstances warranting a reduction in the interest of justice (see People v Williams, 28 AD3d 1005, 1011 [2006], lv denied 7 NY3d 819 [2006]; compare People v Wilt, 18 AD3d 971, 973 [2005], lv denied 5 NY3d 771 [2005]).

Stein, J.P., McCarthy, Lynch and Devine, JJ., concur.

ORDERED that the judgment and order are affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court